Plaintiff, Fairbanks, Morse Co., has appealed from a judgment dismissing, as of nonsuit, its action against the defendants, A. B. C. Oil Burner Heating Company, Inc., and its surety, United States Fidelity Guaranty Company, in which it seeks to recover the purchase price of an air conditioning unit sold and delivered by it to the first named defendant. Plaintiff's claim is based on the following state of facts:
A. B. C. Oil Burner Heating Company, Inc., is a Louisiana corporation, domiciled in New Orleans, where it is engaged in the business of supplying, installing and servicing oil burners and heaters for buildings. Sometime during the years 1940 or 1941, it expanded its operations so as to include the sale, installation and furnishing of air conditioning units. Its venture into the air conditioning contracting business was suggested by Fairbanks, Morse Co., a large Illinois corporation which is engaged in the manufacture of different types of machinery, including air conditioning systems and units. Upon entering into this field of endeavor, A B C Company acted as one of the dealers of Fairbanks, Morse Co. in the City of New Orleans and contracted to furnish and install air conditioning equipment in several buildings.
During the early part of 1941, A B C Company entered into a contract with Mr. George J. Palmer to air condition the latter's residence on St. Charles Avenue in New Orleans. While this work was being performed, the company, through its managing head, Mr. Louis W. Meherin, interested Mr. Palmer in the idea of having his offices, located on the seventh floor of the Queen Crescent Building, air conditioned. During the period of negotiations, respecting the air conditioning of Mr. Palmer's office, A B C Company had representatives of Fairbanks, Morse Co. visit the suite which Mr. Palmer occupied and make certain drawings setting forth the proposed air conditioning system and the type of unit which would be necessary to accomplish the desired result. Upon the recommendation of representatives of Fairbanks, Morse Co., A B C Company placed an order with the former on July 21st, 1941, for the purchase of one SCH-60W self-contained, air conditioning unit, compressor motor, 230 volts DC and fan motor, 230 volts DC, for a price of $917.50.
Due to the fact that Mr. Palmer had registered certain complaints respecting the air conditioning work performed by A B C Company at his residence on St. Charles Avenue, he delayed giving the company a contract for the air conditioning of his office. However, negotiations continued between Mr. Palmer and A B C Company and, on January 28th, 1942, the company made a written offer whereby it agreed to furnish and install the air conditioning unit, which it had previously ordered from Fairbanks, Morse Co., in Mr. Palmer's office suite for $1,485. On February 4th, 1942, Mr. Palmer accepted the offer of A B C and required it to furnish a performance bond. This bond was given by A B C, with United States Fidelity Guaranty Company as surety, in favor of Mr. Palmer and all subcontractors, journeymen, workmen, laborers and furnishers of materials and was conditioned on the faithful performance by A B C Company of all its obligations under its contract to air condition the Palmer office suite.
After the contract with Mr. Palmer was signed, A B C Company called upon Fairbanks, Morse Co. to deliver the air conditioning unit, which it had previously ordered on July 21st, 1941. Delivery was made by Fairbanks Morse on February 12th, 1942, and, thereafter, the unit was installed by A B C in Mr. Palmer's office suite.
Upon completion of the job, Mr. Palmer refused to accept the work on the ground that the air conditioning unit did not produce the results guaranteed by the contractor — that is, it failed to cool the air conditioned spaces to an average temperature of 80° Fahrenheit when the outside temperature dry bulb was 95°. Upon Mr. Palmer's refusal to accept performance, A B C. *Page 395 
through Mr. Meherin, and Fairbanks Morse, through Mr. J.L. Rumold, manager of the company's air conditioning department in Louisiana, undertook to make certain changes in the unit in an endeavor to have it comply with the guarantee contained in A B C's contract with Mr. Palmer. Upon the completion of these changes and the correction of certain minor faults in the machinery, Fairbanks Morse, taking the position that the air conditioning unit was operating properly and that it fully complied with all warranties concerning performance which it had made to A B C at the time of the sale, made demand upon A B C for the payment of the purchase price of the unit. This demand was unavailing.
During 1942, while the representatives of Fairbanks Morse were endeavoring to ascertain the reason for the failure of the machine to perform in accordance with the guarantee made by A B C to Mr. Palmer, A B C Company became insolvent, went out of active business and no further steps were taken by it or its surety, United States Fidelity Guaranty Company, to comply with its contract. Despite this, it appears that Mr. Rumold, as representative of Fairbanks Morse, continued his efforts to ascertain the reason why the unit did not perform in accordance with A B C's guarantee. After making many tests of the equipment, Mr. Rumold came to the conclusion that the machine did not produce the cool air required under A B C's contract because the City water, which was supplied to the machine as a transfer medium to carry off the heat extracted by the air, was inadequate in quantity to produce the maximum cool air, particularly in the summer months when the temperature of the City water was high. And, in order to ascertain whether Mr. Rumold had correctly diagnosed the underlying cause of the unit's failure, Fairbanks Morse employed the firm of James M. Todd, mechanical and electrical engineers of New Orleans, to make an examination of the equipment and to give its opinion of the cause. This examination was made by Mr. L.K. Nelson of the James M. Todd firm during the month of November, 1943. Mr. Nelson testified that the unit operated perfectly and that it was sufficient in size to cool Mr. Palmer's office to the extent contracted for by A B C and that the reason why the unit did not do so was attributable to an inadequate water supply during the summer months when the temperature of the City water was very high. This opinion of Mr. Nelson confirms the evidence given by Mr. Rumold and Mr. A. Walker, the field engineer of Fairbanks, Morse Co. Examination of the record discloses that there is no testimony submitted to offset or rebut the expert evidence of plaintiff's witnesses (other than that Mr. Meherin of A B C Company who merely says that he does not know the cause of the failure of the unit to produce the cool temperature guaranteed by A B C). In view of this, we are obliged to conclude that the only cause of the failure of the unit to cool Mr. Palmer's offices to the extent represented by A B C Company in its contract is due to the inadequacy of water supply.
In these circumstances, the question arises as to whether it was the duty of Fairbanks, Morse Co. or A B C Company to have ascertained, prior to the installation of the unit in Mr. Palmer's office, that the water to be supplied to the unit would be sufficient to make it function in conformity with the guarantee of A B C Company.
Counsel for Fairbanks Morse contends, at the outset, that, since Fairbanks Morse is merely the manufacturer of the equipment and since, in the order of sale to A B C, there is an exclusion of any warranty concerning the performance of the unit, the manufacturer was without obligation in case the desired results were not obtained. The exclusion of warranty relied on, which is contained in the written order given by A B C to Fairbanks Morse, reads as follows:
"It is expressly understood that there are no verbal understandings pertaining to the above; and that Company makes no guaranty or warranty whatsoever as to quality, fitness or performance except that machinery and materials are well made, of good materials in workmenlike manner, and the Company's entire liability in respect of any matter relating to or arising out of this order shall consist solely of and be completely discharged by replacement of parts found, within one (1) year from date shipped, to have been defectively manufactured * * *."
Defendants, on the other hand, maintain that, despite the foregoing exclusion of warranty, the law implied a general warranty respecting satisfactory performance by the unit sold to A B C and that, moreover, Fairbanks Morse has been unable to *Page 396 
successfully establish that the unit would produce the contemplated cool air even if the equipment is supplied with the volume or pressure of water which plaintiff claims to be inadequate at the Palmer office.
[1] There might be some force in the argument made by counsel for Fairbanks Morse, respecting the exclusion of warranty contained in the order given by A B C Company to it, if that order could be viewed as the real contract between the parties. In other words, if this were an ordinary case wherein a manufacturer merely sold equipment to a contractor without any other relationship, it might be logically contended that the printed matter contained in the order for the goods or material represented the contract between the parties and that their rights and obligations were to be governed solely by the terms and conditions of the order. But the evidence in the case establishes, beyond any doubt, that the order was never considered either by Fairbanks Morse or A B C as representing the true contract or agreement between them. On the contrary, it is shown that A B C's venture into the air conditioning business was initiated solely as a result of the suggestion by representatives of Fairbanks Morse; that A B C had never theretofore engaged in that business; that the unit in question was purchased by it from Fairbanks Morse only after the latter undertook to make a survey of the premises to be air conditioned, drawn plans and had reported to A B C that the unit to be supplied be of the size and quality it recommended in order to give satisfactory performance and that, when it was discovered (after the installation of the machine) that it did not produce the result called for in A B C's contract with Mr. Palmer, Fairbanks Morse investigated the difficulty, made certain adjustments and repairs; albeit, in general, recognized that it owed A B C a duty respecting the performance of the equipment sold. In these circumstances, the conclusion is inescapable that Fairbanks Morse not only intended to, and did, warrant that the unit would be suitable for the purposes for which it was bought, but that it waived, by its conduct after discovery that the unit did not produce the desired results, the asserted exclusion of warranty contained in the order of purchase.
Hence, it follows that, if the unit is inadequate in size to function in accordance with the general warranty under which it was sold, or does not operate properly because of defects in the machinery attributable to the manufacturer, the decision below is correct and plaintiff's suit must fail.
[2] When we come to consider the evidence concerning the failure of the unit to produce the cool air contemplated by the parties, we find little difficulty in determining this question in plaintiff's favor. It is shown on behalf of defendants that after the machine was installed there were certain mechanical adjustments which had to be made in order for it to function properly. However, all of these defects (if they are regarded as such) were of minor character and, according to the evidence, were fully remedied by Fairbanks Morse. And, while counsel for defendants make much ado anent the enormity and seriousness of these defects, it is clearly shown by the expert evidence that the failure of the unit to produce the cool air guaranteed by A B C to Mr. Palmer is not due to any vice in the machine or because it is not large enough to accomplish the desired result. In fact, as we have above stated, the evidence makes it plain that the failure of the unit to perform in accordance with A B C's guarantee to Mr. Palmer is due entirely and exclusively to an inadequate water supply.
In this situation, the question arises as to whether it was the duty of Fairbanks Morse or A B C to ascertain, prior to the installation of the unit, that the water supply in Mr. Palmer's office was adequate to permit the unit to function in accordance with the guarantee in A B C's contract with Palmer.
Counsel for defendants assert that A B C and its managing head, Mr. Meherin, were absolutely without knowledge of the requirements respecting water supply to air conditioning units; that Mr. Meherin was new or "green" in the air conditioning field; that he had every right to expect that Fairbanks Morse, in making plans and recommending the type of machine to be used, would ascertain that the water supply in Mr. Palmer's office was sufficient to make the machine deliver maximum performance and that its failure to check the water and electrical supply, prior to its recommendation of the unit to be installed in the premises, prevents recovery.
Conversely, counsel for plaintiff says that the evidence shows that it was not the duty of Fairbanks Morse to ascertain that the *Page 397 
water supply in Mr. Palmer's office was adequate in making recommendation concerning the type of equipment which would function satisfactorily; that this obligation was imposed upon A B C, the contractor; that Mr. Meherin was instructed accordingly, and that, in A B C's contract with Mr. Palmer, the obligation is imposed upon the latter to furnish adequate water to the air conditioning unit.
The evidence, in our opinion, does not sustain the contention of counsel for defendants. It is shown that, while Mr. Meherin attempted in his statement to display ignorance concerning water supply to air conditioning units, he and the company he represents have been in the business for many years of supplying, installing and servicing oil burner and heating equipment for which adequate water supplies are integral and vital matters to be taken into consideration in all contracts. Furthermore, the evidence exhibits that Mr. Meherin is a marine engineer of some twenty-five years' experience and that he had previous experience in the air conditioning business on other contracts where A B C purchased equipment from Fairbanks Morse. For example, Mr. Palmer testified that, when he gave A B C the contract to air condition his home on St. Charles Avenue, Mr. Meherin and his (Palmer's) architect figured on the water supply of the residence prior to undertaking the job. Messrs. Walker and Rumold of Fairbanks Morse Co. testified positively that they told Mr. Meherin, at the time A B C was negotiating with Mr. Palmer on the instant contract, to be sure to check the water supply. Mr. Meherin denies that he was instructed on this score but, since we do not regard Mr. Meherin to be as ignorant on air conditioning problems as counsel for defendants would have us believe, our conclusion is that the evidence submitted by plaintiff's witnesses prevails.
Our view on this point is further fortified by Mr. Meherin's admission on the witness stand that he never considered that Fairbanks Morse would be required to see to it that adequate water pressure was delivered to the unit. He stated as follows:
"Q. Did you have any agreement with Fairbanks, Morse to bring the required water pressure, or quantity of water, to the unit? A. With Fairbanks, Morse, no.
"Q. With whom did you have a contract to bring the required water quantity or pressure to the unit? A. With Mr. Palmer.
"Q. Therefore, it was Mr. Palmer's obligation to furnish the required water pressure? A. I should say it was Mr. Palmer's obligation to furnish an available supply within ten feet of the machine."
Of course, the above quoted testimony is not binding on Mr. Palmer as he is not a party to this suit and the question of whether he was obliged under his contract with A B C to supply the unit with adequate water would be pertinent only in the event of litigation in which he is involved. But the foregoing admissions of Mr. Meherin are of extreme importance to the case at hand — that is, in determining whether A B C contemplated that there was any duty on the part of Fairbanks Morse to ascertain that the water supply in Mr. Palmer's office was sufficient to make the machine function in accordance with A B C's guarantee.
That A B C did not regard that Fairbanks Morse was in anywise concerned with this feature of the installation is not only evidenced by the above quoted admissions of Mr. Meherin but is shown by the contract between A B C and Mr. Palmer, providing that: "Water, Piping, Drains, Etc.: Our proposal covers all necessary water and drain connections to and from the air conditioning unit, but you are to supply us with a water line of sufficient size to any point within ten feet of the air conditioning unit."
A B C was the contractor and it obliged itself to supply Mr. Palmer with an air conditioning unit which would cool his offices to the extent set forth in its contract. It has utterly failed to do so, and the entire purpose of the defense herein seems to be an attempt to shift responsibility for its obligation onto the shoulders of the plaintiff. True, as we have stated, Fairbanks Morse, in its relation to A B C and as seller of the unit it manufactured, warranted that the equipment was of sufficient size to accomplish the purpose for which it was sold; that the machinery was of merchantable quality and workmanship and that it was capable of satisfactory performance of the function assigned to it. But it did not warrant that it would produce the results contemplated, if the contractor or the user failed to supply the unit with the water pressure which was essential to adequate performance. Since *Page 398 
the evidence establishes to our satisfaction that the failure of the unit to perform to the extent guaranteed by A B C to Mr. Palmer is not due to the size of the unit or because of mechanical vices contained therein, plaintiff has performed its agreement as warranted and is entitled to recover the agreed price for the unit.
For the reasons assigned, the judgment appealed from is reversed and it is now ordered that there be judgment herein in favor of plaintiff, Fairbanks, Morse Co., and against the defendants, A. B. C. Oil Burner Heating Company, Inc., and United States Fidelity Guaranty Company, in solido, for the full sum of $900.86, together with eight percent per annum interest thereon from March 12th, 1942, until paid, and ten percent on principal and interest as attorney's fees. And for all costs.
Reversed.