I2I So.2d 736

**A. A. GILBERT PIPE & SUPPLY COMPANY**

v.

**A. R. CASSARD.**

**No. 44223.**

June 29, 1960.

Morgan, Baker, Skeels, Middleton & Coleman, by Turner B. Morgan, Shreveport, for defendant-appellant.

Simon Herold, Garner R. Miller, Shreveport, for plaintiff-appellee.

McCALEB, Justice.

Plaintiff is suing to recover $6,012.83 (plus interest and certain attorney's fees) which is the alleged balance due on the price of secondhand pipe purchased by defendant from plaintiff in December, 1957. Defendant admits the purchase of the pipe but contends that some of the pipe was defective and asks for a diminution of the price in the amount of $3,120.25. Defendant deposited in the registry of the court the sum of $2,912.58, which he claims is the total amount owed on the pipe, plus $20 to cover all costs of court up to the time of deposit. The district court gave judgment in favor of plaintiff and defendant has appealed.

The facts of the case are not disputed and are essentially as follows: Prior to September, 1957, defendant began making plans to run a high pressure gas pipeline from two gas wells in Stonewall, Louisiana to an Arkansas-Louisiana Gas Company pipeline some nine miles away. Defendant engaged a Mr. J. F. Long, a sales engineer, to locate the pipe which would be needed for the line and Long contacted a number of pipe dealers including plaintiff. Long informed plaintiff, through its partners, Mr. A. A. Gilbert and Mr. L. M. Murov, that the pipe used in the line would be tested at a pressure of 600 pounds per square

inch and plaintiff responded on September 10, 1957 with a letter to defendant (carbon copy to Mr. Long), the body of which reads as follows:

"With reference to your proposed purchase from us, through Mr. J. F. Long of approximately 40,000 feet of used 4½" OD plain end and beveled for welding line pipe at 82¢ per foot delivered to Mansfield, it is our understanding that it is your intention to test the pipe in the line at approximately 600# working pressure.

"Since this is used pipe, we cannot make any guarantee, but we will agree to furnish you with another joint of pipe delivered to location to replace each joint of pipe purchased from us which does not stand such test."

It appears that negotiations between Long and plaintiff lagged for about a month but, in late November or early December, Long finally consummated a deal whereby defendant was to purchase 4½" OD pipe at 80¢ per foot, delivered to Irish Engineers, nearby, rather than to Mansfield. The September letter, quoted above, was not referred to during the consummation of the sale.

Between December 12th and December 18th, plaintiff delivered the 4½" pipe to Irish Engineers where it was coated and wrapped. It was then picked up by the pipeline contractor and delivered to the site of the work, where it was welded together and placed in an open ditch. Then several tests were made, and it was discovered that the line would not hold 600 pounds per square inch of pressure because numerous leaks and breaks occurred in the line. Consequently, defendant was forced to have all the leaks and breaks repaired, at a cost of $3,120.25, and as a result he refused to pay plaintiff in full for the pipe purchased. This suit followed.

There is no dispute over the fact that the leaks and breaks occurred as a result of the defective nature of some of the pipe sold and defendant claims that he is therefore entitled to a diminution of the purchase price under the articles of the Civil Code on warranty and redhibition. He makes particular reference to Articles 2520, 2541 and 2542, which read as follows:

"Art. 2520. Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice."

"Art. 2541. Whether the defect in the thing sold be such as to render it useless and altogether unsuited to its purpose, or whether it be such as merely to diminish the value, the buyer may limit his demand to the reduction of the price."

"Art. 2542. The buyer may also content himself with resorting to this action, when the quality, which the thing sold has been declared to possess and which it is found to want, is not of such importance as to induce him to demand a redhibition."

Defendant also cites several cases for the proposition that in all sales there is an implied warranty that the object sold is fit for the purpose intended, which warranty can only be avoided by express and explicit waiver. Fee v. Sentell, 52 La.Ann. 1957, 28 So. 279; Crawford v. Abbott Automobile Co., 157 La. 59, 101 So. 871; A. Baldwin Sales Co. v. Mitchell, 174 La. 1098, 142 So. 700.

Plaintiff recognizes the validity of the principles announced in the cited codal articles, which have been reiterated in the cases relied on by defendant. But it contends that they are clearly inapplicable to the matter at hand for the reason, among others, that the legal warranty has been expressly modified by agreement of the parties. To support this position, counsel for plaintiff lay stress on plaintiff's letter of September 10, 1957, in which it specifically refused to guarantee that the used pipe would stand a test of 600 pounds working pressure but, instead agreed to replace each joint of pipe found unable to stand such test with another joint delivered to location.

In reply to this contention, defendant asserts that the letter of plaintiff is without pertinence to the case because the pipe was not purchased by him until December, 1957.

█ After a thorough review of the record, we are of the opinion that plaintiff's position is well taken and that its letter of September 10, 1957, which defendant kept without comment, constituted the warranty agreement between the parties. Defendant admits he requested his agent, Long, to obtain this letter so that he would know that the pipe was available " * * * and what type of guarantee went with it * * *". In these circumstances, the codal articles and other authorities relied on by defendant are not controlling as the contract itself is the law between the parties. See Articles 1901 and 1764, subd. 2 of the LSA–Civil Code.

█ Defendant contends that the letter of September 10th had no relation to the deal which he later made. However, the evidence shows, without a doubt, that negotiations were begun in August for the same pipe which was eventually purchased in December, and that the contemplated use of the pipe remained the same throughout the four months. Therefore, we conclude that the information in the letter constituted the modified terms under which plaintiff was willing to sell and under which defendant agreed to buy.

Counsel next proclaim that, even if defendants' acceptance of the September letter constituted a waiver of full warranty, that waiver was nullified because of certain remarks made by Mr. A. A. Gilbert (an official of plaintiff) subsequent to September 10th. In support of this, counsel cites defendants' testimony that Gilbert represented to him that the pipe "was built to withstand a 600 pound pressure".

Defendant also cites the testimony of Mr. R. D. Peters, owner of the firm which had contracted to construct the pipeline, who said that, when he went to inspect the pipe, Gilbert stated that it was good pipe but that he (the witness) would not say that Gilbert guaranteed the pipe. In addition, counsel quotes Gilbert's testimony to the effect that he told the defendant and Mr. Peters that he believed the pipe would stand the test but that, if it did not, "we will replace it".

The testimony relied on does not, in our view, justify a holding that plaintiff had in anywise altered its position as to warranty which had previously been set forth in its letter of September 10th, 1957. On the contrary, a fair appraisal of the testimony makes it evident that Mr. Peters was definitely of the impression that Gilbert did not guarantee that the pipe would meet a 600 pound pressure test, and that he simply said it was good pipe. Mr. Gilbert, himself, indicates by his testimony that he let Mr. Cassard and Mr. Peters know that he could not be certain that every piece of pipe would "meet the test", for he says he reiterated the only promise which was made in the September letter—that the Company would furnish a joint of pipe, delivered to the location, to replace each joint which did not stand the test.

The judge did not err in rejecting defendants' demand for a reduction in the price of the pipe. Hence, the judgment is affirmed.