204 So.2d 633 (1967)
CALIFORNIA CHEMICAL COMPANY, Plaintiff-Appellee,
v.
B. R. LOVETT, d/b/a Planter's Dusting Company, Defendant-Appellant.
No. 2107.
Court of Appeal of Louisiana, Third Circuit.
October 27, 1967.
Rehearing Denied November 27, 1967.
Reasons Assigned December 12, 1967.
*634 Polk & Foote, by William P. Polk, Alexandria, for defendant-appellant.
McSween & McSween, by Harold B. McSween, Alexandria, for plaintiff-appellee.
Before FRUGE, LEAR and HOOD, JJ.
HOOD, Judge.
California Chemical Company instituted this suit against B. R. Lovett for judgment on an open account for chemicals which plaintiff sold and delivered to defendant. Defendant denied liability on the ground that the chemicals were useless for the purpose for which they were intended, and he reconvened for damages. Judgment was rendered by the trial court in favor of plaintiff, awarding it the full amount claimed and rejecting defendant's reconventional demand. Defendant has appealed.
During the summer of 1963 defendant Lovett was engaged in the business of aerial spraying of cotton crops in central Louisiana. He owned airplanes and other equipment which were used for that purpose. From time to time he purchased agricultural chemicals, including insecticides and pesticides, from various dealers and manufacturers, and he used these chemicals in his crop spraying activities. His usual method of conducting business was to enter into an agreement with a farmer to provide all of the chemicals, equipment and labor needed to spray or dust the farmer's crop, and in consideration therefor the farmer paid defendant a stipulated sum of money for his services and for the chemicals. Occasionally defendant sold chemicals directly to a farmer who would spray or apply them to the crop himself.
Plaintiff during that period was engaged in the business of manufacturing, selling and distributing agricultural chemicals, including insecticides and pesticides. On March 22, 1963, plaintiff entered into a "consignment agreement" with defendant, under the terms of which plaintiff agreed to deliver to defendant such quantities and kinds of agricultural chemicals as might be mutually agreed upon from time to time. *635 During the period beginning on July 19 and ending September 19, 1963, and pursuant to the above mentioned agreement, defendant ordered from plaintiff and the latter delivered to him quantities of chemicals which were designed to control cotton boll weevils and boll worms. A substantial portion of the chemicals delivered to defendant during that period were known as "Ortho DDT 3 Emulsive" and "Ortho Methyl Parathion 4 Emulsive." The purchase price of the chemicals delivered to defendant during that time was $6,754.04, and that is the amount claimed by plaintiff in this suit.
Defendant used some of these chemicals in fulfilling contracts to spray cotton crops for the control of boll weevils and boll worms. He also sold some of the chemicals which he received from plaintiff to a few farmers, who made their own application of the chemicals to their cotton crops. In each instance where these chemicals were applied to cotton crops, whether by defendant or by the individual farmer, there was a rigid compliance with all of the directions which accompanied the chemicals as to the way they should be mixed and applied.
In every case where these particular chemicals were used to spray cotton crops for the control of boll weevils and boll worms, the farmers complained immediately to defendant that the results had been unsatisfactory. Defendant thereupon contacted plaintiff's agent who promptly investigated and had samples of the chemical know nas "Ortho Methyl Parathion 4 Emulsive" analyzed to determine its contents and toxicity.
The investigation made by plaintiff's agent did not settle the question of whether or not the chemicals were unsuitable for the purpose intended, and finally, this suit was instituted. In resisting plaintiff's demands, defendant contends that the chemicals which he received from plaintiff were "ineffective and completely useless for the purpose intended, having no visible results." He argues that plaintiff knew the purpose for which the goods were purchased by the defendant, and that "the agents and employees of plaintiff represented and warranted to defendant that the chemicals sold to him would fully control and eradicate agricultural insects, particularly boll weevils and boll worms." He contends that he relied on these false representations when he purchased the chemicals and when he either resold them or applied them to the crops of his customers. Plaintiff, on the other hand, contends that "the chemical did kill and was effective, both in the applications complained of and in the laboratory."
At the trial four farmers testified that they had had their cotton crops sprayed by defendant in the summer of 1963, using the chemicals which he had purchased from plaintiff, and that the spraying done with those chemicals did not kill any boll weevils or boll worms at all. In some instances the crops were sprayed more than once with the same chemicals, but no kill was obtained from any application of that insecticide. Each of these farmers later had the defendant spray his crop again, using a different brand of insecticide, and each testified that when the different brand was used an immediate and satisfactory kill was obtained. One farmer stated that he caught a live boll worm and put it in a concentrated mixture of the poison which defendant had acquired from plaintiff, and that the worm was found to be still alive the next day, indicating that the chemical sold by plaintiff, even in a concentrated mixture, would not kill worms.
Three other farmers testified that they purchased some of this insecticide from defendant, and that they sprayed their own cotton crops with it, using the mixture which was recommended by plaintiff and by the LSU School of Agriculture, but that they either got no kill at all or that the kill was not satisfactory.
The tests made by plaintiff of samples of the chemicals which it had sold to defendant *636 revealed that they "were up to the specifications of the manufacturer, California Chemical Company." An expert entomologist called by plaintiff also tested samples of this particular chemical, and he concluded that the methyl parathion "was up to specifications as far as our toxicity tests were concerned," that he would "have no hesitation in recommending the material as one that would do a job on either one of these insects if used in the amounts recommended, used properly," and that "use of these samples of methyl parathion results in the amount of boll weevil kill normally expected of methyl parathion."
The trial judge found that "the kill obtained from the application of the chemicals by the defendant as well as application by some of his customers was not as effective as they would have liked." He concluded, however, that plaintiff had not warranted or guarantied the chemicals to be effective for the purpose of killing cotton boll weevils and boll worms, and thus that defendant was liable to plaintiff for the purchase price of the chemicals even though they may have been ineffective in killing that type of pest.
The evidence convinces us that, despite the results of the tests made by plaintiff, the agricultural chemicals which plaintiff sold to defendant were ineffective and unsuitable for the purpose of controlling and eradicating boll weevils and boll worms from cotton crops. The principal issue presented in this case, therefore, is whether the plaintiff expressly or impliedly warranted that the chemicals would be suitable for that purpose.
In all sales there is an implied warranty that the object sold is fit for the purpose intended, which warranty can be avoided only by express and explicit waiver. LSA-C.C. arts. 2520, 2541 and 2542; A. A. Gilbert Pipe & Supply Company v. Cassard, 240 La. 180, 121 So.2d 736 (1960).
All things that are not forbidden by law may legally become the subject of or the motive for contracts. LSA-C.C. art. 1764. Agreements legally entered into have the effect of law on those who have formed them. LSA-C.C. art. 1901; A. A. Gilbert Pipe and Supply Company v. Cassard, supra. And it has been held not to be contrary to public policy for the implied warranty to be excluded by the contract itself. Landreth Seed Co. v. Kerlec Seed Co., 12 La.App. 506, 126 So. 460 (La.App.Orl.Cir. 1930); Von Zonneveld Bros. & Philippo, Inc., v. Cary, 86 So.2d 252 (La.App. 1st Cir.1956).
The consignment agreement entered into between the parties on March 22, 1963, contains the following provision:
"11. Goods shipped hereunder by Ortho Division will be guaranteed only as to analysis printed upon bags, packages, labels or tags and there shall not be any other guaranty or warranty, express or implied, either as to the quality of Ortho Division's goods or the results from the use thereof or the effects thereof on crops. Consignee has no authority to waive, alter or enlarge the terms of Ortho Division's guaranty." (Emphasis added.)
The chemical known as "Ortho Methyl Parathion 4 Emulsive" was packaged and shipped in metal drums. Plaintiff placed a label on each such drum which sets out the ingredients of the chemical contained therein and directions as to how the chemical should be mixed and applied. The label also contains the following notice:
"NOTICE: The statements made on this label, or by any of our agents concerning this material, are given for information only. They are believed to be true and accurate, but because conditions of use which are of critical importance are beyond its control, California Chemical Company does not make, nor does it authorize any agent or representative to make, any warranty, guarantee or representation, express or implied, concerning *637 this material, except that it conforms to the chemical description on the label. Neither California Chemical Company nor the seller shall be held responsible in any manner for any personal injury or property damage or other type of loss resulting to the buyer or to any person from the handling, storage or use of this material whether or not in accordance with directions. The buyer assumes all risk and liability resulting from such handling, storage or use and accepts and uses this material on these conditions." (Emphasis added.)
We think the provisions of the consignment agreement which was entered into between plaintiff and defendant, and those contained in the label which was attached to some of the chemicals, constituted the warranty agreement between the parties as to the chemicals which were sold to defendant by plaintiff. Under those agreements plaintiff warranted or guarantied the merchandise as to the analysis printed upon the labels, but the seller specifically disclaimed and the purchaser waived any warranty or guaranty as to the results which might be obtained from the use of such chemicals or as to the effects which those chemicals may have on crops.
An issue similar to the one presented here was considered in Landreth Seed Co. v. Kerlec Seed Co., supra, in which case plaintiff sued to recover the purchase price of certain seed plants. Defendant resisted on the ground that the seeds were not as represented and it reconvened for damages. The contract of sale provided: "The D. Landreth Seed Company give no warranty, express or implied, as to description, quality, productiveness, or any other matter of any seeds they send out, and they will not be in any way responsible for the crop." Defendant contended that this disclaimer did not relieve plaintiff of the implied warranty which attaches to all sales that the thing sold is fit for the purposes for which it is purchased. In affirming a judgment for plaintiff, the Appellate Court said: "Generally speaking, there is no limitation upon parties to a contract, and they are free to enter into any stipulation, covenant, or agreement not inconsistent with public policy which may mutually be agreed upon. We see nothing in this waiver of warranty which would take it out of the general rule."
This rule was applied in Gilbert v. Reuter Seed Company, 80 So.2d 567 (La.App.Orl. Cir. 1955, cert. denied); Von Zonneveld Bros. & Philippo, Inc. v. Cary, supra; and A. A. Gilbert Pipe & Supply Company v. Cassard, supra.
The evidence in the instant suit establishes that the chemicals sold by plaintiff to defendant contained the ingredients which were printed upon the labels, and thus the warranty provisions were satisfied. We agree with the trial judge, however, that the disclaimer of warranty or the non-warranty clause contained in the consignment agreement, and in the label which was attached to some of the chemicals, had the effect of relieving plaintiff of any warranty as to the effectiveness of the chemical sold or as to the results which might be obtained from the use of such chemicals on crops.
Defendant contends further that the effectiveness of these chemicals for the control and eradication of boll weevils and worms was specifically guarantied by plaintiff through one of its agents. He testified that he negotiated with plaintiff's agent, Jerry Cloutier, who represented to him that it was a "superior chemical" and that "it would control and eradicate cotton boll weevils, worms and insects." He stated that he relied on the representation made by Cloutier when he purchased this merchandise and when he either resold the chemicals or applied them to the crops of his customers. Cloutier denied that he made any such representation to defendant, although he concedes that he told defendant that "we have a good product" and that "it is for insect control."
*638 The trial judge obviously concluded that the evidence failed to show that the chemicals sold to defendant had been specially warranted by plaintiff's agent to be effective for the control and eradication of boll weevils and boll worms. We have reviewed the evidence, and we agree that it fails to establish that Cloutier bound plaintiff to any greater warranty than that contained in the consignment agreement.
Defendant points out, correctly, that the exclusion or waiver of a warranty by which parties make law unto themselves is in derogation of general law and should be strictly construed. Harris v. Automatic Enterprises of Louisiana, Inc., 145 So.2d 335 (La.App. 4th Cir.1962); Breeden v. General Motors Acceptance Corp., 140 So.2d 680 (La.App. 4th Cir. 1962); and Meyer v. Mack Motor Trucks, Inc., 141 So.2d 427 (La.App. 4th Cir.1962). In the instant suit, however, the exclusion or disclaimer of warranty in the consignment agreement is specific, precise and unambiguous. Strictly construed, it means simply that the chemicals sold are guarantied only as to analysis printed upon the labels, and that there is no warranty as to the results from the use of the chemicals or the effects thereof on crops.
The case of Roby Motors Co. v. Price, 173 So. 793 (La.App. 2d Cir.1937), cited by defendant, is not applicable because there the reviewing court found that "[t]he misrepresentations were the equivalent of fraud and have the effect of nullifying the waiver of warranty relied on by plaintiff." In the instant suit there were no misrepresentations and no fraud.
American Hoist and Derrick Co. v. Frey, 127 La. 183, 53 So. 486 (1910), also cited by defendant, is not applicable because in that case there was no agreement excluding or waiving the warranty implied by law. The court found that the merchandise sold was suitable for the purposes intended and thus that the implied warranty was satisfied.
Defendant contends further that plaintiff nullified its disclaimer of warranty by investigating the complaints made by defendant, citing Fairbanks, Morse & Co. v. A. B. C. Oil Burner and Heating Co., 24 So.2d 393 (La.App.Orl.Cir.1946), as authority for that position. In the cited case the court found that Fairbanks, Morse & Company, the seller, had specifically warranted the air conditioning unit sold to be effective for the purpose intended, and that there had been no waiver or exclusion of that warranty. The merchandise sold was effective for that purpose, however, and the original seller recovered the amount claimed. One issue raised in the case was whether a printed statement on the order form, which statement purported to disclaim warranty, was intended by the parties to constitute a part of the separate contract of sale in which there had been a specific warranty. The court considered the actions of the parties after the sale as being material in determining the intent of the parties, and it concluded that the parties had never intended for the above mentioned printed statement to constitute a part of the original contract of sale. No such issue exists in the instant suit, so the Fairbanks, Morse & Company case is not applicable.
Finally, defendant contends that if the waiver is found to be valid its application must be limited to the ultimate consumer, because of a provision in the consignment agreement that "Consignee has no authority to waive, alter or enlarge the terms of Ortho Division's guaranty." We do not agree. Defendant Lovett is the "consignee" referred to in that agreement. We think the quoted provision means that in reselling the chemicals defendant cannot bind plaintiff to a greater warranty than that shown in the consignment agreement. In any event, there is nothing in that statement which could justify a conclusion that the other provisions of the consignment agreement, which specifically limit plaintiff's *639 warranty of the chemicals, are to be applied only to ultimate consumers and not to defendant.
Our conclusion is that under the provisions of the consignment agreement which was entered into between the parties, plaintiff's warranty of the chemicals sold is restricted to a guaranty only as to analysis printed on the labels, and that it did not warrant that merchandise as being effective for the control and eradication of cotton boll weevils and boll worms. We find no error in the judgment of the trial court permitting plaintiff to recover.
For the reasons herein set out the judgment appealed from is affirmed. The costs of this appeal are assessed to defendant-appellant.
Affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.
FRUGÉ, J., votes for rehearing and assigns reasons.
CULPEPPER, J., recused.
FRUGÉ, Judge.
I am of the opinion that a rehearing should be granted in this case in order for us to give added consideration to the question whether or not public policy should permit the commercial enterprise to produce a product, advertise it, and place it on the market making representations that the product is designed to serve one particular purpose, and then totally avoid any and all responsibility on its part, should the product fail to be suitable for the purpose it was intended and represented to serve.
The majority opinion found, and I agree, that the California Chemical Company sold to B. R. Lovette certain insecticides, the apparent and represented purpose for which was to eradicate boll weevils and boll worms. In the contract between the two above mentioned parties, the California Chemical Company had inserted a waiver of warranty provision which, as held by the majority, effectively relieved it of any liability in the event that the insecticides should be ineffective for the eradication or control of boll weevils. Thus, now, under the contract provision, the California Chemical Company is able to collect the total price of all the chemicals supplied Lovette, although none of these chemicals were effective as to the purpose for which they were purchased.
The majority found that the chemicals were applied according to standard procedures by the defendant Lovette as well as by others, and in each time the chemical failed to work. So there appears to be no factual question relating to the possibility that the insecticides sold by California Chemical Company were not applied properly. Therefore, we must read the waiver of warranty provision under the assumption that the failure of the insecticide to give proper results must be due to the composition of the chemicals themselvesthat is, if there is any fault involved for the failure of this insecticide to work, such fault must be charged against the plaintiff, California Chemical Company.
Although contracts should be given effect as written by the parties thereto, in this case there are somewhat extenuating circumstances. In the first place, it should be recognized that the contract here involved is a consignment agreement which is drawn up by California Chemical Company, who now seeks its enforcement against the defendant who, as a matter of practicality, had no voice in the terms of the contract whatsoever. It appears hardly likely that this contract was one entered into by two parties dealing with each other at arms length. In the second place, the plaintiff is a manufacturer doing business in interstate commerce which produces its own chemicals and advertises and sells same to individual users such as the defendant. It *640 might be asked if this court should enforce a provision which allows such a company to produce and market a product having only one possible use and require any purchaser thereof to agree that should the product fail to be effective whatsoever for its intended use or purpose, that he, the purchaser must, nonetheless pay the price notwithstanding the fact that the product has no utility to him whatsoever even though no fault is attributable to the purchaser for its failure.
From the facts as found by the majority, it must be concluded that the chemicals sold to Lovette were defective in some unascertained way. Also under the facts as found by the majority, it appears that this defect must be chargeable to the plaintiff California Chemical Company. To then conclude that the defendant is liable for the price of the chemicals by virtue of the fact that he waived the benefits of implied warranty under the contractual agreement appears to be overly-strict adherence to certain legal principles resulting in a harsh holding.
There is also a principle which can be summarized as requiring that one should not unjustly enrich himself at the expense of another. Here, the plaintiff is collecting for the price of goods he manufactured and sold to the defendant which did, in actuality, contain no value at all. Regardless of the contract provisions and the statement on each container of chemicals, the defendant did not intend to purchase chemicals. He merely intended to purchase an insecticide. It was not this particular chemical composition he wished to purchase but instead, a product which would eradicate or control boll weevils and boll worms. The evidence indicates that this chemical compound was sold to defendant specifically and solely for that purpose. There is another principle of law which provides that if an object of a contract lacks the quality which the parties deem to be a principle cause for the formation of the contract, then the contract fails to be valid and binding upon the parties (CC Art. 1845). Thus, where the defendant intended to purchase insecticide and received only containers of chemicals which did not function as insecticides, then it would appear that the contract to pay for such was void ab initio, as the chemicals did not possess the quality as to which they were represented to possess, which quality was the principal cause for the defendants purchase of that chemical composition. And even if it be said that the defendant intended only to purchase of the chemicals as specified on the containers themselves, nonetheless, it is unmistakable that his motive for purchasing those chemicals was to receive a product which would be effective as an insecticide, which motive was known to the other party; and the ineffectiveness of the chemical compound as an insecticide must be deemed as error in the motive or cause of the contract thereby invalidating the contract itself. (See Civil Code Article 1824 through 1827.) And if both parties believed these chemicals were effective as an insecticide and in fact were not, then it would appear that the contract could be avoided by virtue of the principle of mutual error of fact, and this principle could apply although the implied warranties were waived under the contract.
The action in warranty is generally an action brought by the purchaser against the seller of an item seeking in effect to enforce and uphold a contract. On the other hand, an action predicated upon error is one whereby one party asks the court to decide that a contract was of no effect and void, in that both parties suffered from some error relating to the principle cause of the contract.
I have doubt that the case of Landreth Seed Company v. Kerlec Seed Company, 126 So. 460 (La.App.Orl.Cir.,1930) bears much weight in determining the issues that I have outlined above; for in that case the implied warranty which was excluded related to the quality of a seed. There, the seller had no means of determining and ascertaining the precise qualities in the future performance of each particular seed. In the instant case, the plaintiff vendor is *641 a manufacturer, distributor and seller of a produce which is solely man-made and tested by him. Its qualities are artificially produced by scientific means and should be exactly as he represents them to be.
It is for the purpose of giving more serious consideration to the possible application of some of the above principles to the instant case that I have voted for granting of a rehearing in this matter.