377 So.2d 1290 (1979)
Allen GAUTHIER, Plaintiff-Appellee,
v.
BOGARD SEED COMPANY, Defendant-Appellant.
No. 7233.
Court of Appeal of Louisiana, Third Circuit.
November 12, 1979.
Rehearing Denied January 15, 1980.
J. Michael Percy of Ledbetter, Percy & Stubbs, Alexandria, for defendant-appellant.
P. J. LaBorde, Jr., Marksville, for plaintiff-appellee.
Before CUTRER, STOKER and DOUCET, JJ.
DOUCET, Judge.
This case was consolidated for trial and appeal with Numbers 7234 through 7248 on the docket of this Court. The issues are the same in all of these cases and will be discussed herein, although separate opinions in each case are being rendered on this day.
Allen Gauthier, an Avoyelles Parish farmer, instituted this suit against Bogard Seed Company (hereinafter referred to as Bogard) to recover damages resulting from his having planted alleged defective soybean seed processed and packaged by Bogard. Bogard, an Arkansas corporation doing business in Louisiana, sells soybean seed and other agricultural products. This matter was consolidated for trial with fifteen similar suits brought against Bogard by other Avoyelles Parish farmers, seeking the same relief. After a trial on the merits, the district court rendered judgment in favor of plaintiff, awarding him $1,855.00 in damages. Individual judgments were also rendered in favor of the plaintiffs in the other suits, awarding them a total of $155,176.66 in damages. Bogard appeals.
In February of 1978, Bogard sold a quantity of Certified Forrest Variety soybean seed to Hickory Grain Elevator, Inc. in Cottonport, Louisiana. A portion of that seed was later sold to Mr. Nick Mayeaux, who in turn sold it to the plaintiff farmers through his two retail farm supply outlets, Red River Farm Supply in Effie, Louisiana and Mayeaux Farm Supply in Cottonport, Louisiana.
The crops which were produced by the farmers after planting this seed proved to be less than satisfactory. Their chief complaint was that they achieved poor "stands" (i. e., the number of viable plants produced from the seed was inadequate). The trial *1291 judge concluded that the poor stands were the result of defects in the seed, which caused much of it to fail to germinate or to produce plants which did not grow, develop and produce properly. He further concluded that Bogard was liable to the farmers for the damages they incurred as a result of these defects under any one of three separate and distinct legal theories.
The first theory advanced by the trial court was that Bogard had breached an express warranty made in connection with its sale of the seed. In compliance with the regulatory provisions of the Federal Seed Act Section 1-420, 7 U.S.C.A. Sections 1551-1610 and LSA-R.S. 3:1431-3:1448, Bogard had placed a tag on each container of the seed. Those tags showed the soybean seed had been grown and inspected in Arkansas, and had been tested in January of 1978 and found to have a 70% germination rate. The trial judge held that by placing the tags on the containers of seed Bogard had expressly warranted that the seed would germinate at a rate of 70%. Williams v. Ring Around Products, Inc., 344 So.2d 1125 (La.App. 3rd Cir. 1977). Based on his finding that the seed had actually germinated at a rate far below 70%, he concluded that Bogard had breached that warranty.
The second theory set out by the trial court was that by selling defective seed Bogard had breached the implied warranty in all Louisiana sales that the object sold is fit for the purpose intended. LSA-C.C. arts. 2520, 2541, and 2542; A. A. Gilbert Pipe & Supply Company v. Cassard, 240 La. 180, 121 So.2d 736 (1960); Williams v. Ring Around Products, Inc., supra.
Finally, the court found that the doctrine of res ipsa loquitur was applicable and that Bogard had failed to rebut the presumption of negligence raised against it. Boudreaux v. American Insurance Company, 262 La. 721, 264 So.2d 621 (1972).
The issues raised by Bogard on appeal are:
(1) whether the evidence presented supports the trial court's finding of liability under any of the theories set out above, and
(2) whether the amount of damages awarded was correct.

BREACH OF EXPRESS WARRANTY
As we noted earlier, every container of seed shipped by Bogard to Hickory Grain Elevator, Inc. bore a tag showing that the germination rate of the seed was 70%. The trial court correctly held that the germination rate set out on the tag was an express warranty made by Bogard. Williams v. Ring Around Products, Inc., supra. Bogard does not dispute the fact that it made the warranty, however, it argues that the evidence does not support the trial court's conclusion that the germination rate was actually below 70%. We agree.
The record reflects that the seed was tested twice by the Arkansas State Plant Board before it was shipped by Bogard. Both tests showed the germination rate to be above the represented 70%. After its arrival in Louisiana, the seed was tested again on two separate occasions at the instance of the Louisiana Department of Agriculture. Those tests also indicated that the germination rate was higher than 70%. After he had begun to receive complaints from the farmers, Mr. Mayeaux arranged for an additional test to be made by the Louisiana State Seed Laboratory. The germination rate was again found to be in excess of 70%. This case is thus distinguished from Williams v. Ring Around Products, Inc., supra, in which cotton seed represented as having a germination rate of 70% was tested by the Louisiana Department of Agriculture and found to have a germination rate of only 49%.
The only evidence offered to contradict the results of these tests was the testimony of some of the farmers that the seed had germinated at a much lower rate when planted in their fields. They did not all agree on that point, however. Many of them acknowledged that most of the seed had in fact germinated, and attributed their poor stands to the fact that the infant plants had failed to thrive and grow rather than the fact that the seed had not sprouted. We believe that the preponderance of the evidence is that the seed germinated at the rate represented by Bogard, and that *1292 Bogard, therefore, did not breach its express warranty.

BREACH OF IMPLIED WARRANTY
In addition to their complaints about the germination rate, many of the farmers complained about the failure of the plants produced from the seed to grow, develop and produce properly. The trial Court correctly concluded that the sale of the seed was made with an implied warranty that the seed would be free of defects producing such an effect. Clearly, agricultural seed that is incapable of producing healthy plants is not fit for its intended use. We cannot agree, however, with the trial court's finding that the deficiencies in the crops were caused by defects in the seed.
The only objective evidence supporting that conclusion was the results of an "accelerated aging test" performed by Mr. Charles Sciple, director of the Mississippi State Seed Testing Laboratory. The purpose of that test is to measure the "vigor" of the seed. There does not appear to be a universally accepted definition of the term "vigor", however, as we understand it, it refers to the ability of the seed to germinate and produce healthy plants under less than ideal conditions.
The accelerated aging test is performed by subjecting the seed to relatively high temperature and humidity for a designated period of time, after which the number of seeds which have germinated are counted. Mr. Sciple had performed this test on two samples of the Bogard seed sent to him by the Louisiana Department of Agriculture. He testified that at the end of the test only 17½% of the seeds in one sample and 18½% of the seeds in the other sample had germinated. According to Mr. Sciple, normal healthy seed which germinates at a rate of 70% in the standard germination test should germinate at a rate of at least 50% in the accelerated aging test.
Bogard raised considerable doubt about the validity of the test performed by Mr. Sciple. It presented substantial evidence indicating that the seed from which the samples were taken had been damaged by storing it under adverse conditions after it had been shipped to Louisiana. Furthermore, the consensus of the opinions of the other experts who testified was that the accelerated aging test furnishes little reliable or useful information about the seed. Apparently, this is primarily due to the fact that the test attempts to measure the seed's ability to respond to only one kind of stress. The test is therefore not required for the certification procedures established by the Federal Seed Act or the corresponding laws of most states.
In light of the above, we conclude that the results of the accelerated aging test are entitled to little weight. We find no other evidence in the record to support the trial court's determination that Bogard breached its implied warranty of fitness by selling defective seed.

NEGLIGENCE
In addition to finding breaches of the express and implied warranties made in connection with the sale, the trial court found that Bogard could be held liable because of its negligence in processing and handling the seed. It was established at the trial that Bogard had had exclusive control of the seed from the time it was purchased from the Arkansas farmers who grew it until it shipped it to Louisiana. During that time, Bogard had stored the seed, removed unwanted debris from it by mechanical means, and packaged it for sale. In response to hypothetical questions posed by plaintiff's counsel, some of the witnesses testified that soybean seed could be injured by rough handling or exposure to plant diseases. There was, however, no direct evidence of any negligent acts by Bogard.
The trial court concluded that under the doctrine of res ipsa loquitur a presumption of negligence was created, which Bogard failed to rebut. In the recent case of Walker v. Union Oil Mill, Inc., 369 So.2d 1043 (La.1979), our Supreme Court said the following with respect to the application of that doctrine:
"The real test of applying res ipsa loquitur is: Do the facts of the controversy suggest negligence of the defendant, rather than some other factor, as the most plausible explanation of the accident? *1293 Application of the principle is defeated if an inference that the accident was due to a cause other than defendant's negligence could be drawn as reasonably as one that it was due to his negligence. Boudreaux v. American Insurance Company, 262 La. 721, 264 So.2d 621 (1972)."
After carefully reviewing all of the evidence, we cannot say that Bogard's negligence is the most plausible explanation for plaintiff's injuries. Even if we were to assume that the deficiencies in the crops were caused by damage to the seed rather than some other factor such as adverse weather conditions or poor soil preparation, the damage could easily have been inflicted after Bogard relinquished control of the seed. The seed had been handled and stored not only by Bogard but also by Hickory Grain Elevator, Inc., Mr. Mayeaux and the farmers.
Under these circumstances, we do not believe that application of the doctrine of res ipsa loquitur is proper. Without the aid of that doctrine, plaintiff clearly has not carried his burden of proving that Bogard was negligent.
We conclude that the facts do not support a finding of liability under any of the theories advanced by the trial court or any other legal theory that we are aware of. Having determined that Bogard is not liable for plaintiff's injuries, we do not reach the issue of whether the amount of damages awarded was correct.
For the above and foregoing reasons, the judgment in favor of plaintiff, Allen Gauthier, and against defendant, Bogard Seed Company, in the amount of ONE THOUSAND EIGHT HUNDRED FIFTY-FIVE AND NO/100 ($1,855.00) DOLLARS is reversed and set aside.
It is ordered, adjudged and decreed that there be judgment herein in favor of defendant, Bogard Seed Company, dismissing plaintiff's suit at his cost. All costs of this appeal are assessed against plaintiff, Allen Gauthier.
REVERSED AND RENDERED.