140 So.2d 680 (1962)
Robert W. BREEDEN, Jr.
v.
GENERAL MOTORS ACCEPTANCE CORP.
No. 477.
Court of Appeal of Louisiana, Fourth Circuit.
May 7, 1962.
John F. Fox, Jr., New Orleans, for plaintiff-appellee.
Tucker & Schonekas, New Orleans, for defendant-appellant.
Before SAMUEL, JOHNSON and HALL, JJ.
JOHNSON, Judge.
The defendant has appealed from a judgment of the First City Court of the Parish of Orleans rescinding the sale made November 11, 1960, by defendant to plaintiff of a Renault Dauphine automobile and awarding the plaintiff a refund of $100.00 paid on the purchase price and the return of his note for $744.00.
Soon after the purchase plaintiff said he detected that the engine was not operating properly. After driving the car for nearly three months, plaintiff discussed the condition of the engine with Mr. Arthur J. Marr, Jr., an employee of defendant, who had some part in making the sale of the car to plaintiff. Mr. Marr referred plaintiff to Foreign Car Motor Company as reliable *681 experts on servicing foreign-make cars. A few days later, on the morning of February 3, 1961, plaintiff took the car to the Foreign Car Motor Company to have it examined, and there plaintiff talked to Mr. Walter K. Rupert, Jr. Mr. Rupert was a factory trained, experienced mechanic in the repair of foreign-make cars. Mr. Rupert made a quick examination of plaintiff's motor by use of a stethoscope, but did not go into the engine on that occasion. He did remove and clean the spark plugs. Mr. Rupert said he detected a noise which had to be either in the connecting rods or in the main bearing, he could not tell exactly which without going into the motor by removing the pan which encases the motor at the bottom. Mr. Rupert also found that the engine was worn so much that oil was coming through the cylinders badly, which was fouling the spark plugs. Mr. Rupert told plaintiff that the engine was very much in need of immediate general overhauling and without it he would soon have serious trouble with the engine's operation. Rupert also told plaintiff that the motor may give him trouble at any time. In their discussion, plaintiff said he was informed that it would cost about $250.00 to do the necessary repairs. Mr. Rupert did not recall whether he gave plaintiff an estimate of cost to overhaul the engine. At any rate, there was no definite engagement made either as to the price or to have the work done. When plaintiff left the shop that morning, he drove the car to his office in New Orleans. In the afternoon of that same day, plaintiff started across the Mississippi River bridge and when going down the decline on the west side, plaintiff suddenly heard a terrific noise in the motor. He let the car coast to the bottom of the decline and called Mr. Rupert to send for it. When the car was towed to the shop, Mr. Rupert found a hole in the side of the motor block. He removed the pan and discovered that a connecting rod bolt had backed entirely out and the rod became disconnected and jammed the hole in the side of the motor block. The reason the bolt came out was that there was no lock ring installed to hold the bolt in place. Rupert also found that the lock ring on one other connecting rod bolt was missing, but the bolt had not backed out far enough to free the rod. The lock ring is a small, thin, metal device installed on the bolts which fasten the ends of the connecting rods to the pistons and crankshaft. Mr. Rupert said that if there had been lock rings on the two bolts from which they were missing, necessarily, the rings would have dropped into the pan when they came off, but they were not in the pan. Therefore, he concluded that the rings had not been installed at all on these two bolts by whomever had previously worked on the motor. He said that the rings on the bolts of the other connecting rods were in place but they were badly worn and those rods soon would have given trouble. Also, that while the motor could operate several months initially without those rings, it would be just a matter of time until the vibration caused the bolts to work out to leave the rods disconnected from the pistons, which would wreck the engine.
After the engine in the car broke down, the car could not be operated and plaintiff tendered the return of the car to defendant, coupled with the demand for surrender of his promissory note and refund of the $100.00 he had paid on the purchase price. This tender and demand were refused and this suit was filed on February 7, 1961.
The defendant offered no evidence to disprove the testimony on behalf of plaintiff and relies on the contention that defendant did not warrant the car. Defendant had acquired the car by repossession from someone to whom it was sold previously. Defendant called Arthur J. Marr, Jr., an officer of the defendant company, who said on direct examination that the car had some work done on it after the repossession and that it was sold to plaintiff without warranty and "as is."
On cross-examination, Mr. Marr admitted that the bill of sale offered in evidence (D-1) does not provide that the car was sold without warranty, except immediately *682 above the signature of the purchaser there is printed these words: "Car or other property is accepted AS IS and on the above terms." The terms referred to are the price and manner of payment. The insertion of the words "as is" has grown into common usage in the sale of movable property, particularly in the sale of secondhand motor vehicles. It is possible that when the term was first employed, a good many years ago, the seller may have thought he was relieving himself of any warranty of the property, but our Courts have never said in any case that these words alone effected a complete waiver of all warranty. Counsel for defendant contends that the case of Roby Motors Co. v. Cade, La.App., 158 So. 840, holds that there was a waiver of all warranty in the use of that term. It is true that the sale in the Roby Motor Company case was made on that provision, but that was not the only condition in that transaction. There was the added agreement that "Any adjustments or repairs made from this day on will be charged for." When the purchaser bought that property with the understanding that he would have to pay for all repairs, that was tantamount to a waiver of all warranty.
Counsel for defendant quotes at length in support of his contention from the case of Union Motor Car Co. v. Drumm, 3 La. App. 741, where the Court refused to rescind the sale of an old car that hadn't broken down but was in running condition when the offer to return the car was made. Even then, the Court added that:
"We would not wish to be understood as holding that the presence of these words in a contract of sale would amount to the waiver of all warranty by the purchasers."
In this case now before us, the car was not an old car. It was a 1960 model, sold within the year, and it had broken down completely for the reason that it was vitally defective on the day it was sold to plaintiff and because of the vice it was sure to break down by ordinary use within a very short time, as was clearly explained by the testimony of Mr. Rupert.
The case of Parmentel v. Messmer, 9 La. App. 553, 119 So. 288, cited by defendant, is of no assistance to defendant because the facts are so different from the present case and in addition to which the defendant pleaded fraud in that case, but did not prove fraud. Nor are the facts in the case of Illinois Cent. R. Co. v. National Sand & Gravel Co., 17 La.App. 623, 136 So. 652, comparable to the facts we are dealing with in the present case. In that case the railroad sold a locomotive to defendant and after having had it repaired once, for which the defendant paid, and thereafter using it in defendant's gravel business for ten months, defendant contended that plaintiff had agreed to overhaul and recondition the engine at the time it was sold to defendant, almost a year previously, which plaintiff denied. The Court rejected defendant's reconventional demand to rescind the sale.
Other decisions have well established the rule in this state that complete waiver of all warranties, being in derogation of the warranty implied in our general law, must be express and implicit and strictly construed, and that a sale "as is" can be rescinded for redhibitory defects. LSA-C.C. Article 1764(2); Stracener v. Nunnally Bros. Motor Co., 11 La.App. 541, 121 So. 617; Falk v. Luke Motor Company, Inc., 237 La. 982, 112 So.2d 683; Roby Motors Co. v. Price, La.App., 173 So. 793; Kuhlmann v. Purpera, La.App., 33 So.2d 84; Dougherty v. Petrere, 240 La. 287, 123 So. 2d 60; 23 T.L.R. 120; 19 L.L.R. 170.
In the case at bar, the evidence is convincing that parts of the motor were left out by the defendant's mechanic employed to recondition it after defendant repossessed the car from the previous owner, or put lock rings so badly worn on only some of the connecting rod bolts that they could not serve to enable the motor to operate for any reasonable length of time. Plaintiff *683 gave the car only ordinary use for less than three months when it disintegrated. It is common knowledge that an automobile less than one year old when sold should be fit for reasonable service for several years.
There is one interesting aspect in the testimony of Mr. Marr. On direct examination he merely said that when the car was repossessed defendant had some work done on it to put it in shape for sale. He did not elaborate. On cross-examination, when asked about what the work consisted of, he at first only referred to a repair bill of $34.29, which did not involve any work inside the motor. When pressed for further information, it developed that defendant had performed a general motor overhaul, including pistons, points, condensers, sleeves, etc., for a total of $80.34. In view of Mr. Rupert's explanation, it is reasonable to assume that the mechanic who did that work for defendant failed to replace the lock rings as he should have done.
By supplemental answer defendant makes the alternative plea that should the Court hold that the sale was made with warranty, making defendant responsible for a redhibitory vice, then, defendant alleges plaintiff is only entitled to a reduction of $20.00 in the sale price, the amount alleged to be the cost of installing lock rings before the final break down. That figure was given as an approximate estimate of that cost after the exact trouble became known. Nobody knew what the exact trouble was on that Friday morning before the final break down, and before the pan was removed after the break down. Besides the car broke down only after its use of an hour or so after Mr. Rupert informed plaintiff that he could drive it but could expect difficulty at any time. If plaintiff had been derelict in having the motor repaired after Rupert's advice and there was positive proof and agreement of what the cost would be to repair it that morning of February 3rd, before the break down, there may have been some merit to defendant's alternative claim. But that is not the situation and the doctrine of quanti minoris can not be applied.
Nor is there any merit to defendant's claim for payment for the use of the car by plaintiff. For one thing, there is not a word of evidence to support it.
For these reasons, the judgment appealed from is affirmed at the cost of defendant.
Affirmed.