141 So.2d 427 (1962)
Bernard M. MEYER
v.
MACK MOTOR TRUCKS, INC.
No. 397.
Court of Appeal of Louisiana, Fourth Circuit.
May 7, 1962.
Rehearing Denied June 4, 1962.
Certiorari Denied June 29, 1962.
*428 Reed, Reed & Reed, Floyd J. Reed, New Orleans, for defendant-appellant.
Simon & Wicker, Lawrence D. Wiedemann, New Orleans, for plaintiff-appellee.
Before McBRIDE, REGAN and JOHNSON, JJ.
JOHNSON, Judge.
On October 12, 1956, plaintiff made written offer to purchase a used dump truck from defendant in New Orleans, at a price of $6,800.00. Printed on the back side of the order form were terms and conditions including warranty of new vehicles. At the bottom of the back page, printed in bold type, it says: "The above warranty shall not apply to used motor vehicles or equipment, the same being sold `as is'." This offer to purchase was not signed in acceptance by defendant, and, therefore, there was no contractual relationship created by that offer made by plaintiff and whatever it says will be disregarded.
Within a few days plaintiff, accompanied by defendant's salesman, Mr. Russo, drove the truck plaintiff had selected to purchase, to Slidell and on the trip a noise developed in the rear end. In response to a telephone call, defendant's mechanic went to Slidell and returned with the truck to defendant's shop to eliminate the noise. That repair was made and plaintiff then drove the truck to Kenner, accompanied by the same salesman, to try it out with a load. When loaded with sand the truck developed loss of power and would not pull. The load was dumped at the site and the truck was towed into defendant's shop. Plaintiff was informed on that occasion that a certain part had been incorrectly installed by a mechanic and correction of that trouble was made. Thereafter its power seemed satisfactory and on October 31, 1956, plaintiff bought that truck. On that day defendant and plaintiff executed a combination sale and chattel mortgage in authentic form. Beginning about November 12, 1956, plaintiff commenced to have trouble with the truck's operation. During the ninety-six days plaintiff had the truck it was in defendant's shop for repairs on twenty-three separate occasions, a total of forty-five days. The evidence enumerates various and sundry things wrong with it on those occasions. For example, the drive shaft broke or slipped out of place to require replacement and repair a total of thirteen times. Mr. Shapero, defendant's mechanic, had been employed by defendant thirty-five years. In that time he said he had worked on different types of Mack trucks. He said some of the trouble with plaintiff's truck was very unusual, and that of all eight used trucks of the same type they did not have any trouble with any of them, except the one sold this plaintiff.
Mr. Russo, the salesman, who negotiated this sale to plaintiff, said he went with plaintiff on the trial runs to Slidell and Kenner; that he saw the type of hauling that was being done on a job plaintiff had at Kenner; that he knew that plaintiff wanted this truck on that job; that he knew what was expected of the truck, and that he believed this truck would do the work satisfactorily. He was asked if he informed the plaintiff of his opinion that this truck would be suitable for that hauling and he answered. "No, I kept that to myself." Plaintiff testified that in their discussion Mr. Russo assured him that after defendant acquired this truck by trade-in it was put through the shop and had been thoroughly reconditioned. Plaintiff said Mr. Russo guaranteed that this truck would do the job plaintiff wanted done. We say that Mr. Russo admittedly wanted to make the sale and it would not be unreasonable to conclude that the salesman did tell plaintiff exactly that.
*429 Defendant, being either unable or unwilling to put the truck in usable condition, plaintiff delivered the truck to defendant on February 4, 1957, and demanded the return of his pickup truck which had been traded in on the purchase price, or if the pickup truck could not be returned in its same condition then plaintiff asked for its value in money. In the purchase of the Mack truck from defendant plaintiff traded-in a pickup truck (much smaller than the Mack truck) at a value of $1,700.00. This suit is to rescind the sale of the dump truck to plaintiff and to have the pickup truck returned to plaintiff, or, in the alternative, that plaintiff have judgment against defendant for $1,700.00. The trial Court gave judgment in favor of plaintiff in that amount and defendant has appealed.
Plaintiff's proof is ample that this vehicle contained such vices or defects that its use was rendered so inconvenient and imperfect that plaintiff would not have purchased it had he known of the vices and defects. Defendant has offered no proof to the contrary whatsoever, and has rested its defense on its allegation that the truck was sold "As is" and without warranty.
The written sale and chattel mortgage executed by these parties contained the following stipulation:
"Mortgagee makes no warranties as to the property, express, implied or implied by law, except (as to new vehicles only, all used vehicles being sold `as is') the manufacturer's standard vehicle warranty, as follows:"
Counsel for defendant concedes that where no warranty is mentioned or where only the general warranty is waived, the sale of a vehicle "as is" carries with it, as a matter of law, the implied warranty that the vehicle is suitable for the use for which the purchaser desires or intends to use it. This is especially true when the seller is informed or has knowledge of the use to which purchaser will put the vehicle. The Louisiana Civil Code provisions on this subject make it clear that warranties may be waived by the purchaser and our Courts have held that such waiver, being in derogation of the general law, must be express and explicit and strictly construed. LSA-C.C. Article 1764(2); Stracener v. Nunnally Bros. Motor Co., 11 La.App. 541, 121 So. 617; Falk v. Luke Motor Co., 237 La. 982, 112 So.2d 683.
If the language quoted above in the sale and chattel mortgage was intended to be an express waiver of the implied in law warranty as well as a waiver of the general warranty, it can not be construed as such because it is so ambiguous that an express waiver can not be read into it. In addition to the ambiguity referred to, when a sale of movable is made under the condition "as is," the term nullifies any attempt to renounce the implied in law warranty, and such condition is clear notice to the purchaser that the seller warrants the property as being fit to serve the use for which it is purchased, provided, of course, that use is reasonably within the realm of the purposes for which the property is manufactured. For instance, a dump truck is manufactured to satisfactorily operate to haul and automatically unload its cargo.
Counsel for defendant further contends that when property is sold with qualification "as is" no warranty whatever is intended in the absence of fraud, and in such cases an action in redhibition will not lie. Counsel cites the case of Roby Motors Co. v. Cade, La.App., 158 So. 840. The sale in that case did not rest on the sole condition of "as is." In that sale appears the following:
"It is agreed that any used car purchased under this order is sold as is; we do not guarantee. Any adjustments or repairs made from this day on will be charged for. We do not guarantee the mileage or model."
That agreement amounts to the purchaser's waiving any right an implied warranty might otherwise entitle him to have repairs made free if the vehicle did not fulfill its intended use. In this case defendant *430 had the truck in its shop for repairs twenty-three times. These repairs were made gratis on all those occasions except two.
Subsequent decisions on the subject hold that a sale "as is" does not waive the implied warranty and that redhibitory defects in the property will support the right to set the sale aside and relieve the purchaser from his obligation to pay the purchase price. Roby Motors Co. v. Price, La. App., 173 So. 793; Kuhlman v. Purpera, La.App., 33 So.2d 84; Dougherty v. Petrere, 240 La. 287, 123 So.2d 60; 23 T.L.R. 120; 19 L.L.R. 170.
In this case after plaintiff returned the truck to defendant and demanded cancellation of the deal, defendant foreclosed on its chattel mortgage by executory process. The truck was sold by the sheriff to defendant as the only bidder. Counsel for defendant argues that no intervention having been made by plaintiff in that proceeding plaintiff is now cut-off from any relief by the present action, and that the order for an executory process is res judicata of the present issue. Such is not the law. Mack Motor Truck Corporation v. Coco, 235 La. 1077, 106 So.2d 518. Prerequisite to an action to rescind the sale of property for cause is the return of the property purchased to the seller, or to make a tender to return it, unless such tender would be an idle gesture. This truck was returned to defendant and the fact that defendant had it seized and sold to defendant by the sheriff does not operate to deprive the purchaser of his right to have the sale rescinded.
In this case defendant filed a reconventional demand for judgment against plaintiff for the unpaid remainder of plaintiff's chattel mortgage note in the sum of $4,443.73 (after credit was allowed for the amount of the price of the adjudication of the property to defendant at the sheriff's sale) and for $226.98, the amount of two invoices for repairs. Plaintiff had paid nothing on the purchase price except by way of the trade-in of his pickup truck at $1,700.00. The record shows that the pickup truck cannot be returned to plaintiff and the trial Court rendered judgment against defendant for $1,700.00 with interest and costs, decreed that the sale of the Mack motor truck by defendant to plaintiff on October 31, 1956, be rescinded and set aside as null and void, and dismissed the reconventional demand.
For these reasons the judgment of the trial Court is affirmed with costs to be paid by defendant.
Judgment affirmed.