LANDRY, Judge.
Plaintiff, purchaser of a 1955 Studebaker automobile from defendant, brought this action individually and as natural tutrix of her minor son, Robert Cosey, to rescind the sale for alleged redhibitory vices and defects. After trial on the merits the lower court rejected plaintiffs demand on the ground the reputed deficiencies were not established with that degree of certainty required by law. We are in agreement with the stated conclusion of the trial court and therefore affirm his decision.
The sole issue for determination is factual, namely, the condition of the vehicle at the time of sale. In essence, appellant maintains the automobile was discovered subsequent to the transfer to be inoperable because its transmission was faulty in that the gears would not shift. Appellant further alleges she would not have purchased the car in dispute with prior knowledge of such defect. On the other hand, appellee asserts the vehicle was in good operating condition for an automobile of such vintage but that plaintiff, for reasons best known to herself, after having made the purchase, decided she did not want the car and abandoned the automobile.
In support of her contention the vehicle was so defective it could not be successfully made to run, appellant relies upon her own testimony corroborated by that of her son Robert and an acquaintance, Johnny Davis.
Plaintiff’s testimony and that of her son was essentially the same on all basic issues. Their evidence may be summarized as follows: The automobile in question was purchased June 15, 1965, and driven to appellant’s home that afternoon. After leaving defendant’s establishment, the car’s engine began to “knock” or make an unusual noise. On arriving at plaintiff’s home, Robert raised the hood to inspect the motor and oil was observed on the engine and underside of the hood. Robert also testified that before leaving defendant’s premises he inspected the engine and at that time there was no oil either on the motor or the underside of the hood. Upon observing the excess oil, Robert attempted to start the motor but the battery failed and the engine would not start. A rebuilt battery was then purchased and installed in the vehicle with the help of Johnny Davis, an acquaintance. After installing the new battery, Robert started the engine and, accompanied by Davis, drove the car about 100 yards at which point the engine stopped. When efforts to start the motor proved unavailing, Robert and Johnny pushed the car back to plaintiff’s home. The next day, Davis, using his own vehicle, pushed the car to defendant’s establishment and then to a mechanic’s shop pursuant to instruction by defendant. Three or four days later, plaintiff called defendant’s place of business and was advised the car had been repaired. Plaintiff and her son were then driven by *99 Johnny Davis to the shop and upon Robert starting the engine it was discovered the vehicle would not move because the gears would not shift. Thereupon plaintiff reported to defendant’s car lot and requested that defendant substitute another vehicle in place of the one purchased. Defendant declined to either repair the car or substitute another on the ground the Studebaker had been repaired and was in good condition for a car its age. Plaintiff, her son and acquaintance then departed defendant’s car lot. Plaintiff has since made no further inquiry or shown any interest in the car in question.
Johnny Davis testified that on the day the car was purchased, he drove Robert to obtain a battery and helped install the new battery in the Studebaker. The car was then started and driven about half a block at which point the engine died. He and Robert then pushed the car back to the Cosey home. The. next day he used his truck to push the car to defendant’s used car lot and from there to the mechanic shop on instruction from someone in defendant’s employ. Approximately four days later he drove Robert and his mother to the mechanic shop to pick up the car. Although he did not attempt to drive the car, he noted that whereas Robert could start the engine, the car would not move. From the mechanic shop he drove Robert and his mother back to defendant’s used car lot and then to their home. He had no knowledge of any conversation between plaintiff and Robert and either defendant or the mechanic concerning the condition of the vehicle. He further testified, however, that while helping Robert install the new battery on the day the car was purchased, he noticed excessive oil on the engine and the underside of the hood.
James Smith, an automobile mechanic with twenty years experience, testifying on behalf of defendant, stated that prior to the purchase of- the vehicle, he performed a “minor tune up” of the car at defendant’s request. He further stated that prior to and at the time of said tune up, he had driven the vehicle and observed nothing wrong with the transmission. Neither was he aware of any knocking of the engine or an excess of oil on the motor. After completing the tune up, he released the car to defendant’s lot in good running order for a car of its age and condition. Subsequently, the vehicle was pushed to his shop because it would not start. At this time, however, neither plaintiff nor her son spoke to him concerning the car’s failure to run. Inspection revealed,a ,loose battery terminal and ignition wire both of which defects he remedied. After making these adjustments, he drove the car around the block and experienced no difficulty in shifting gears. Neither did he note any unusual engine nosie. A few days later the Coseys returned. Robert got into the car, drove it about forty feet, backed it up to the shop and stated that the car was not right but did not state specifically what he believed to be wrong. Plaintiff and her son then left whereupon Smith started the car and drove it around. He found nothing wrong and called defendant’s place and was instructed to keep the vehicle until defendant contacted plaintiff about the matter. Smith further testified that at the time of performing the tune up and trial of the case, he had no business connection with defendant other than performing repairs to cars for defendant upon request.
Otis Day, defendant’s salesman, testified he sold the automobile to plaintiff. At the time of trial he was no longer in defendant’s employ. Day also stated that he drove the car in question the day before he sold it to plaintiff and that it functioned normally for a 1955 model. He also rode in the car on the day of the sale when the vehicle was tried out by Robert. Insofar as Day knew, there was nothing wrong with the car when it was sold to plaintiff. Day testified further he had not driven the car since it was sold and had no further dealing with plaintiff other than to direct her to defendant Cambre when either plaintiff or her son called him about the car shortly after the sale was made.
*100 William Cambre, defendant, testified he purchased the car about two weeks before selling it to plaintiff. After acquiring the vehicle, he had it tuned by James Smith, a mechanic. He had no contact with plaintiff prior to the sale but did speak with plaintiff who complained after the sale was effected. He advised plaintiff to return the vehicle and he would have it checked by a mechanic. When plaintiff brought the car back, Cambre sent it to Smith’s shop with instructions to repair any defects as soon as possible. Several days thereafter plaintiff contacted him again and advised the car was still not in running condition and requested another automobile. In reply he informed plaintiff he could not give her another car as Smith had advised him there was nothing wrong with the automobile. According to defendant, this was the last contact had with either plaintiff or her son.
In urging reversal of the lower court’s judgment, counsel for appellant maintains the trial court failed to apply the established jurisprudence holding that the purchaser of an automobile is entitled to receive a vehicle which will meet his needs and that a car which is not in running condition is not fit for the purposes intended by the buyer. In so contending, appellant relies upon Jackson v. Breard Motor Co., Inc., 167 La. 857, 120 So. 478; Falk v. Luke Motor Co., Inc., 237 La. 982, 112 So.2d 683; Combs v. International Harvester Company, La.App., 115 So.2d 641.
While we are in complete accord with the rule of law established by the cited decisions, it is equally well settled that in an action to rescind the sale of a movable for alleged redhibitory vices, the purchaser bears the burden of establishing the reputed defect by a preponderance of evidence. United Engineering Co. of Louisiana v. Durbin, La.App., 68 So.2d 614.
In short, the testimony offered on plaintiff’s behalf vacillates between an attempt to first prove the vehicle’s motor was defective and an apparent abandonment of this argument in favor of the contention the gears were faulty. The evidence produced by appellant on these issues was flatly contradicted by defendant and more important by the two disinterested witnesses, Smith and Day. Under such circumstances we believe, as did the trial court, that plaintiff has failed to establish her claim by a preponderance of evidence as required by law.
Accordingly, the judgment of the trial court is affirmed at plaintiff’s cost.
Affirmed.