270 So.2d 149 (1972)
Anthony DONACHRICHA, Plaintiff-Appellee,
v.
Frank J. D'ANTONI, d/b/a Satellite Motors and Aetna Casualty & Surety Company, Defendants-Appellants.
No. 9063.
Court of Appeal of Louisiana, First Circuit.
November 13, 1972.
*150 E. Clark Gaudin (Smith & Gaudin), Baton Rouge, for defendants-appellants.
J. R. Coxe, III (Coxe & Coxe), Baton Rouge, for plaintiff-appellee.
Before SARTAIN, BLANCHE and EVERETT, JJ.
SARTAIN, Judge.
This is an action in redhibition arising out of the sale of a used 1964 Chevrolet to plaintiff, Anthony Donachricha, by Frank J. D'Antoni, doing business as Satellite Motors of Baton Rouge, Louisiana.
The City Court of Baton Rouge awarded judgment for plaintiff rescinding the sale and ordered refund of the purchase price and all costs incidental to the sale for a total judgment of $834.00, from which judgment defendants bring this appeal.
The automobile was purchased September 28, 1971, for a price of $595.00 by plaintiff for the use of his son, Anthony D. Donachricha. The sale was consummated at the office of City Credit in Baton Rouge, which company financed the purchase. Present in the office at the time of the sale were Anthony Donachricha, Mrs. Anthony Donachricha, Anthony D. Donachricha, Frank J. D'Antoni, and Lester E. Dees, the manager of City Credit Corporation.
Plaintiff's son, Anthony D. Donachricha, testified that he had gone to Satellite Motors on two occasions prior to the sale, once alone and once accompanied by his mother, to look over the car. Anthony and his mother both testified that Mr. D'Antoni told them that the car was in good running condition. Plaintiff, Mr. Donachricha, testified that when he first saw the auto outside the office of City Credit on the day of the sale, Mr. D'Antoni told him the car was in good condition.
Defendant, Mr. D'Antoni, denies having made any representations to the Donachrichas as to the condition of the auto. He stated that he had just purchased the car himself and did not know what kind of shape it was in. Both Lester E. Dees and his brother, Robert N. Dees, who were present outside the office of City Credit when plaintiff first saw the car, testified that they remember Mr. D'Antoni stating that he did not know how much oil the car would use.
On the day of the sale plaintiff noticed that the auto was smoking but went through with the sale when assured that the car was in good condition. Plaintiff's son stated that the smoking worsened on the day after the sale, and upon examining the oil level and finding it low he added some oil. The auto continued to smoke, and during the next few days consumed oil at the rate of one to two quarts per day reaching a total of twelve (12) quarts of oil in 300 miles driven, according to plaintiff and his son.
Seven days after the sale, on October 5, 1971, plaintiff took the vehicle to Istrouma Motors with complaints of excessive use of oil, smoking, and engine noise. John L. Alford of Istrouma Motors testified that he gave plaintiff an estimate that it would cost around $392.00 to replace the motor and put it in "first-class condition." Plaintiff then requested defendant to have the repairs made or assist in paying for these repairs. D'Antoni refused and the repairs were never undertaken.
A few days later plaintiff's son began hearing noises in the rear end of the car, and by the second week after the sale the auto was completely inoperable due to the *151 loss of the transmission. The auto was again taken to Istrouma Motors and Mr. Alford stated that the transmission was inoperable due to the breakage of a carrier bearing cap in the rear end. Alford testified that it is highly unusual for these to break on their own and that as far as he knew popping the clutch or backing up and then putting the car in forward without stopping would be needed in order to break one of these caps. He estimated that it would cost $156.50 to correct this problem.
At this point plaintiff retained legal counsel and on October 11, 1971, a formal tender of the automobile to defendant was made by certified mail in return for a refund of the purchase price. The defendant refused and this litigation was begun. The automobile has remained inoperable during this litigation.
Defendant-appellant contends that the trial court erred in finding any redhibitory defect in the vehicle and in finding that the sale was made with warranty.
Louisiana Civil Code Article 2476 imposes upon the seller of things an obligation of warranty against hidden defects of the thing sold or its redhibitory vices. This action is founded upon Louisiana Civil Code Articles 2520 and 2530 relative to the vices which give rise to the action in redhibition. LSA-C.C. Art. 2520 provides:
"Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice."
LSA-C.C. Art. 2530 provides:
"The buyer who institutes the redhibitory action, must prove that the vice existed before the sale was made to him. If the vice has made its appearance within three days immediately following the sale, it is presumed to have existed before the sale."
These provisions relative to redhibitory vices have been held applicable to sales of automobiles, and it is settled that in such an action where complicated machinery is involved the buyer need only prove that a defect exists without having to prove the underlying cause of the defect which makes the thing sold unfit for its intended use. Stumpf v. Metairie Motor Sales, Inc., 212 So.2d 705 (4th Cir. La. App.1968).
Appellants contend that the evidence adduced by the purchasers was insufficient to establish their claim by a preponderance of the evidence and therefore the trial court erred in finding redhibitory defects to exist in the vehicle. In support of this contention they rely primarily on the case of Cosey v. Cambre, 204 So.2d 97 (1st Cir. La.App.1967) in which an action in redhibition was based on an alleged defect in the motor of an auto and on an alleged faulty transmission. In Cosey plaintiff and her son testified that the gears on the car would not function even after a mechanic attempted to repair the auto. However, this testimony was rebutted by that of the mechanic who tested the car after plaintiff asserted that the gears would not function and found the auto and its transmission to be in working order. The court based its ruling that plaintiff had failed to prove her case on this testimony of the disinterested mechanic.
In the instant case there was no such rebuttal testimony on the part of defendant-appellant. In fact the mechanic who testified indicated that if the car was using the amount of oil which plaintiff and his son stated it was using, then at the very least the car probably had an oil leak and probably would not run.
It is firmly established in our jurisprudence that the purchaser of an automobile should receive a vehicle which will meet his needs and a car which is not in running condition is not fit for the purposes intended by the buyer. Reech v. *152 Coco, 223 La. 346, 65 So.2d 790 (1953); Stumpf v. Metairie Motor Sales, Inc., supra.
It is the position of plaintiff-appellee that the prohibitive use of oil is a redhibitory defect in this vehicle which renders it unfit for the purposes intended by the buyer, thereby entitling him to a rescission of the sale. This position is amply supported by the cases of Port Finance Co., Inc. v. Campbell, 94 So.2d 891 (1st Cir. La.App. 1957) and Route v. Smith Chevrolet, 128 So.2d 58 (1st Cir. La.App.1961).
In Port Finance the sale of a six year old Mercury automobile for $495.00 which consumed a prohibitive amount of oil and smoked excessively was set aside on the grounds that this constituted a redhibitory vice in the vehicle. The court stated further that the use of oil could not be held an apparent defect discoverable on simple inspection merely because the vehicle smoked. There, as in the case before us, the witnesses who testified as to the defects in the vehicle were relatives or friends of the purchaser and the trial court was held justified in believing them.
In the Route case a used Chevrolet was the subject of an action in redhibition due to the prohibitive consumption of oil. In rescinding the sale the court stated:
"While, concededly, a secondhand car may be expected to burn some oil, under no circumstances could a purchaser of a secondhand car for a substantial price be held to reasonably anticipate the vehicle would burn four quarts of oil in 60 miles." 128 So.2d 58, 61.
According to the testimony of Mr. Donachricha and his son, they put some twelve quarts of oil in the auto within 300 miles driven. Although this is not as much oil as was used by the auto in Route, it is clear that consumption of oil at this rate was excessive and constituted a redhibitory defect in the auto compelling a rescission of the sale.
Appellant also contends that the sale was made without warranty and that notification of this fact was given to plaintiff. It appears that this contention is equally without merit.
The following Louisiana Civil Code articles are pertinent to this issue:
"Article 2474. The seller is bound to explain himself clearly respecting the extent of his obligations; any obscure or ambiguous clause is construed against him."
"Article 2475. The seller is bound to two principal obligations, that of delivering and that of warranting the thing which he sells."
"Article 2503. The parties may, by particular agreement, add to the obligation of warranty, which results of right from the sale, or diminish its effect; they may even agree that the seller shall not be subject to any warranty. * * *"
In construing these provisions in suits involving rescission of sales on grounds of redhibitory defects, our courts have consistently held that the warranty against redhibitory defects and the implied warranty of fitness are provided "of right" to the buyer unless expressly waived by agreement between the parties, and such waiver must be specific and unequivocal. Stevens v. Daigle & Hinson Rambler, Inc., 153 So.2d 511 (1st Cir. La.App.1963); Stumpf v. Metairie Motor Sales, Inc., supra.
Defendant-appellant argues that any warranty of the fitness of the auto was disclaimed by him due to his statement to plaintiff that he did not know how much oil the car would use and that the auto was sold "as is". These contentions are unfounded. No where in the transcript does it appear that Mr. D'Antoni ever specifically told plaintiff that the sale was without warranty. The words allegedly spoken *153 between them at the time of the sale to the effect that Mr. D'Antoni did not know how much oil the vehicle would use cannot be seen as an "express waiver" by the buyer of the warranties implied by law.
Even had the sale been made under the terms "as is", such a sale does not preclude the warranties implied by law and the buyer is entitled to a rescission where redhibitory vices and defects are proved. Meyer v. Mack Motor Trucks, Inc., 141 So.2d 427 (4th Cir. La.App.1962).
In the case of Breeden v. General Motors Acceptance Corp., 140 So.2d 680 (4th Cir. La.App.1962), it was specifically stated at page 682 that:
"Other decisions have well established the rule in this state that complete waiver of all warranties, being in derogation of the warranty implied in our general law, must be express and implicit and strictly construed, and that a sale `as is' can be rescinded for redhibitory defects." (citations omitted)
In this case the evidence put forth by Mr. Donachricha was adequate to warrant a holding by the trial court that the vehicle was subject to a redhibitory vice in that it used a prohibitive amount of oil which rendered it imperfect and useless for the purpose intended. The evidence was equally adequate to support a finding that warranty was not excluded in this sale.
While we find no manifest error on the part of the City Court in granting a rescission of the sale, we do find that the loss of the transmission was not a redhibitory defect in the vehicle and was in fact caused by the improper use of the auto while in plaintiff's possession. Plaintiff's own witness, Mr. Alford of Istrouma Motors, testified that the breakage of the carrier bearing cap resulting in the loss of the transmission must have been caused by improper use of the clutch.
Therefore, the judgment of the City Court must be amended to deduct therefrom the cost of repairing the transmission, which, according to the estimate of Mr. Alford, will be $156.50, and, as amended, said judgment is affirmed at appellant's cost.
Amended and affirmed.