322 So.2d 375 (1975)
Paul GUILLORY, Jr., Plaintiff and Appellant,
v.
MOREIN MOTOR COMPANY, INC., et al., Defendants and Appellees.
No. 5237.
Court of Appeal of Louisiana, Third Circuit.
November 20, 1975.
*376 Fonenot & Mitchell by Guy O. Mitchell, III, Ville Platte, for plaintiff-appellant.
Preston N. Aucoin, Ville Platte, Peter C. Piccione, Lafayette, for defendant-appellee.
Before CULPEPPER, DOMENGEAUX and PAVY, JJ.
DOMENGEAUX, Judge.
This is an action in redhibition to rescind the sale of a used automobile. The plaintiff, Paul Guillory, Jr., purchased a used car from the defendant, Morein Motor Company, Inc., in Ville Platte, Louisiana. After a short time the vehicle ceased to function, and the plaintiff brought this suit against Morein seeking recision of the sale and damages. He further sought injunctive relief against General Motors Acceptance Corporation prohibiting it from proceeding against plaintiff on the chattel mortgage and promissory note executed pursuant to the sale. General Motors Acceptance Corporation filed an exception of no right or cause of action, which was sustained by the trial court. After trial on the merits the plaintiff's suit against Morein was dismissed with prejudice. From the latter judgment plaintiff has appealed. The facts of this case are as follows:
On July 8, 1974, in Ville Platte, Louisiana, Guillory purchased a used 1966 Pontiac automobile from Morein. The bill of sale indicates that the price of this vehicle was $675.00. It further indicates that the mileage on the vehicle at the time of sale was 95,537 and after the word "warranty" on the bill of sale there was a dash with a "0" indicating that the vendor did not extend any warranties to the automobile.
The day after the sale plaintiff began to experience difficulty with the vehicle. On July 9, 1974, the 1966 Pontiac automobile developed trouble concerning the water pump. This difficulty was called to the attention of the vendordefendant and was repaired at no cost to the plaintiff. Shortly thereafter the vehicle ceased to run, the cause being attributed to failure of the timing chain. The defendant repaired the timing chain at plaintiff's cost.
Subsequently, on August 5, 1974, the plaintiff discovered a loud hammering noise in the engine. He testified that he checked the oil and that the crankcase appeared to be full. Plaintiff returned the car to defendant's shop the following day for inspection. The plaintiff testified that he drove the car at a reduced speed from his home to the defendant's shop, a distance of approximately two miles. Defendant's mechanics, after examining the vehicle, determined that the motor was "burned up" because it had been operated without any oil pressure. The plaintiff testified *377 that the red oil pressure warning light in the automobile did not come on during the trip from his home to the defendant's shop. However, the defendant's mechanic, Nelson Charlie (also the father-in-law of the plaintiff), testified that when he first inspected the vehicle on that fateful day at the defendant's shop, the red oil pressure warning light was functioning and in operation, indicating a dangerous lack of oil pressure in the engine.
Plaintiff requested that the defendant provide him with a new or rebuilt engine or repair the one in the automobile. The defendant refused and offered to replace the engine with a rebuilt one at the plaintiff's expense. Plaintiff then tendered the vehicle to the defendant and brought this action.
The trial judge did not rule specifically on the issue of waiver of warranty evidenced by the "0" after the word "warranty" on the bill of sale. Instead, he ruled that plaintiff failed to carry his burden of proof that the fatal defect to the automobile (the oil pump malfunction) existed at the time of the sale and further that the plaintiff's action in driving the vehicle with the oil pressure warning light on was the proximate cause of the engine's demise.
The plaintiffappellant raises the following specifications of error:
1. The trial judge erred in his finding that the defendant failed to meet his burden of proof that the defect existed at the time of the sale.
2. The trial judge erred in his finding that the same warranties do not apply to used and new cars alike.
Although the trial judge did not deal directly with the question of warranty waiver in his reasons for judgment, the plaintiff makes a considerable argument on the issue. We shall deal with this threshold consideration first.
The fact is elementary that had the trial judge found an effective waiver of warranty by the plaintiff, the dispute would have terminated at that point. Since the trial judge dealt with the more substantive issues of the case in his reasons for judgment, it is logical to assume that he found no waiver of warranty. However, in the interest of clarity we shall rule on the issue.
Art. 2475 of the Civil Code sets forth the two principal obligations of the seller:
"Art. 2475. Seller's obligations of delivery and warranty
The seller is bound to two principal obligations, that of delivering and that of warranting the thing which he sells."
Art. 2476 further defines the warranty described in the preceding article.
"Art. 2476. Warranty against eviction and against latent defects
The warranty respecting the seller has two objects; the first is the buyer's peaceable possession of the thing sold, and the second is the hidden defects of the thing sold or its redhibitory vices."
Every sale in this state carries with it the legal warranty set out in Art. 2476, in that the thing sold is free of hidden defects or redhibitory vices. This warranty of fitness applies by operation of law, but it may be waived by the buyer. Civil Code Article 1764, Section A(2) reads:
"Art. 1764. Contracts; subject, motive, elements determining nature, and exceptions to implied warranty provisions
A. All things that are not forbidden by law, may legally become the subject of, or the motive for contracts; but different agreements are governed by different rules, adapted to the nature of each contract, to distinguish which it is necessary in every contract to consider:
. . . . . .
2. Things which, although not essential to the contract, yet are implied from *378 the nature of such agreement, if no stipulation be made respecting them, but which the parties may expressly modify or renounce, without destroying the contract or changing its description; of this nature is warranty, which is implied in every sale, but which may be modified or renounced, without changing the character of the contract or destroying its effect."
However, our courts have long held that any waiver of these statutory warranties must be express, explicit, and strictly construed. Meyer v. Mack Motor Trucks, Inc., 141 So.2d 427 (La.App. 4th Cir. 1962); Breeden v. General Motors Acceptance Corporation, 140 So.2d 680 (La.App. 4th Cir. 1962); Prince v. Paretti Pontiac Company, Inc., 281 So.2d 112 (La.1973); California Chemical Company v. Lovett, 204 So.2d 633 (La.App. 3rd Cir. 1967).
In the instant case the only evidence introduced by the defendant to support a waiver of the statutory warranty was the bill of sale executed by the parties. This document is a standard form bill of sale, the body of which lists the date of sale, data about the vehicle, price paid, buyer and his address, and the signature of the seller. In addition, in the lower left corner of the bill of sale are several headings in small type followed by blank spaces. Each of these blank spaces is filled in with the data corresponding to the heading, such as mileage, driver's license number and social security number of buyer, color of car, and warranty. After the word "warranty" there is a hand-written "0" evidently indicating no warranty. This all-important statement of waiver is located in a most inconspicuous position on the document. It is doubtful that an individual such as the plaintiff, a semi-illiterate, would have noticed or understood the implications of that small "0". Furthermore, the document entitled Bill of Sale is not in authentic form although there is space provided for signatures of a notary and witnesses. This Bill of Sale was the only document purporting to be a waiver of warranty. By no stretch of the imagination did the plaintiff's action in signing this "Bill of Sale" amount to an express and explicit waiver of the warranties provided by law. Therefore we determine the statement of "0" warranty to be without effect.
Since there was no waiver by the plaintiff, we must now determine exactly what warranties apply to the vehicle which defendant sold to plaintiff. Civil Code Articles 2475 and 2476 state the basic warranties applicable to a sale. Article 2476 speaks of hidden defects and redhibitory vices, the latter of which is defined in Article 2520.
"Art. 2520. Redhibition, definition

Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice."
Article 2520 is limited by Article 2530.
"Art. 2530. Proof of existence of vice before sale
The buyer who institutes the redhibitory action, must prove that the vice existed before the sale was made to him. If the vice has made its appearance within three days immediately following the sale, it is presumed to have existed before the sale."
Reading these articles in conjunction we find that the seller warrants that the thing sold is free from hidden defects and redhibitory vices, which are those defects rendering the thing imperfect for its intended use and which would have prevented the buyer from making the purchase had he known of their existence. Further, these defects must exist at the time of the sale.
The vehicle sold to the plaintiff in this case manifested defects shortly after the *379 sale. Two days after the plaintiff took possession of the car the water pump proved to be defective, causing the car to stop running. The defendant remedied this difficulty at his expense. However, the following day the car again refused to properly function. It was taken to the defendant's garage but the cause of the problem could not be isolated. The plaintiff took the car back and it ran adequately for approximately the next two weeks. Approximately three weeks after the sale the car again stopped running. The cause was traced to a malfunctioning timing chain which was repaired, this time at plaintiff's cost. The day following the timing chain repair the vehicle again ceased to run. There also appeared to be an excessive knocking noise in the engine at this time. The following day the plaintiff got the car running and drove it at a very slow speed to the defendant's garage. Upon examination by the defendant's mechanic the conclusion was reached that the engine was ruined because apparently the oil pump had stopped working, and the vehicle had been driven without any oil pressure.
It is clear that the plaintiff in this case had considerable difficulty with his vehicle the entire time that it was in his possession. While we agree with the trial judge that the same warranties of fitness do not apply to old and new cars alike, the thing sold must still be fit for its intended purpose. The purpose for which one purchases an automobile is that of transportation, be it a used or new vehicle. If an individual wished to purchase a stationary hulk of nuts and bolts with four wheels on it certainly he could do so at a lesser cost than the price paid by plaintiff for the automobile in question.
The defendant's agent and salesman, Lee S. Ardoin, testified that he represented to the plaintiff that the car was in "good running condition." We find it difficult to believe that a car which breaks down four times within the first month of ownership is "in good running condition".
We find the case of Standard Motor Car Company v. St. Amant, 18 La.App. 298, 134 So. 279 (1st Cir. 1931), (reversed on other grounds at 138 So. 461) particularly relevant to this litigation. In St. Amant the plaintiff purchased a used car which exhibited many of the same difficulties as the one involved in the instant case. The vendor contended that the vehicle was delivered in "running condition". The court said:
"Running condition, we think, means a little more than that; a car should keep in running order, at least, for more than a couple of weeks after its purchase, when it has been properly taken care of, as appears to have been the case herein. The many defects, which soon made their appearance for the reasons hereinabove given, authorize the inference that the defects existed when the car was sold or before."
We do not believe that the 1966 Pontiac vehicle sold to the plaintiff was in good running condition as was warranted by the vendor. Obviously, defects existed in the vehicle which placed it within the purview of Article 2520, that is, there were defects in the thing sold which rendered it so inconvenient and imperfect that it must be supposed the buyer would not have purchased it had he known of these defects. We also feel that the plaintiff met his burden of proof in showing that these redhibitory vices existed prior to the sale. An automobile is a complicated piece of machinery, and a purchaser is not to be burdened with the impossible task of proving the cause of every defect and difficulty which he encounters. It is sufficient that he merely show their existence. Peters v. Pattison Pontiac Company, Inc., 259 So.2d 99 (La. App. 4th Cir. 1972).
The trial judge found that the plaintiff drove the automobile approximately two miles with the red oil pressure warning light in operation and that this negligent operation of the vehicle was the proximate cause of the ruination of the engine. While the oil pump was defective through *380 no fault of the plaintiff, it was incumbent upon him to heed this mechanical warning and cease operation of the vehicle. We cannot hold the vendor liable for damage caused to the engine by plaintiff's unreasonable action in operating the vehicle with the oil pressure warning light on.
Therefore, we hold that the plaintiff is entitled to recision of the sale in which he purchased the 1966 Pontiac automobile from the defendant and a return of the purchase price, but with the following modifications.
In accordance with Civil Code Article 2531 the plaintiff shall be given an additional credit of $56.41 which he paid for replacement of the timing chain, a cost incurred in preservation of the thing sold. Plaintiff's award shall then be reduced by the amount necessary to replace the ruined engine, said amount to be determined upon remand.
We remand this case to the District Court to ascertain the cost of replacing the damaged engine of the 1966 Pontiac with one of a similar quality. The District Court shall determine the condition and value of the engine prior to its ruination from lack of oil pressure (this amount shall not include the cost of replacing the oil pump which we find to be a redhibitory defect).
For the above and foregoing reasons the judgment of the District Court is reversed insofar as it denies recision of the sale, and it is hereby ordered that the sale of the 1966 Pontiac automobile be rescinded, subject however, to the above referred to modifications. The judgment of the District Court is affirmed insofar as it holds that the ultimate damage to the automobile's engine was caused by the plaintiff's negligence. The case is remanded to the District Court for the sole purpose of determining the cost of replacing the engine according to the instructions set out herein, and rendering proper judgment consistent with this opinion.
Costs at trial, on appeal, and on remand shall be borne equally by plaintiff and defendant.
Reversed in part, affirmed in part, and remanded.