343 So.2d 754 (1977)
The WILDA, INC., Plaintiff and Appellee,
v.
DEVALL DIESEL, INC., et al., Defendants and Appellants.
No. 5832.
Court of Appeal of Louisiana, Third Circuit.
March 4, 1977.
*755 Scofield, Bergstedt & Gerard, Richard E. Gerard, Jr., Lake Charles, for defendant-appellant.
Kimball, McLeod & Dow by Robert L. Dow, Lake Charles, for plaintiff-appellee.
Karl E. Boellert, Camp, Carmouche, Palmer, Carwile & Barsh, Lake Charles, for defendant-appellee.
Before HOOD, CULPEPPER and DOMENGEAUX, JJ.
DOMENGEAUX, Judge.
Plaintiff-appellee, The Wilda, Inc., brought this action to recover damages resulting from the malfunction of a marine diesel engine previously overhauled by defendant-appellant, Devall Diesel, Inc. The trial judge awarded plaintiff the sum of $15,874.21 against Devall Diesel, Inc., representing the costs of repairing the engine as well as lost profits due to "down time".[1]
Defendant has appealed suspensively to this court alleging the trial court's error in the following particulars:
1. Finding that plaintiff sustained its burden of proof,

*756 2. Failing to draw a negative inference from plaintiff's failure to call certain witnesses,
3. Failing to find that plaintiff waived its right to claim damages for "down time", and
4. Failing to find that plaintiff violated a long-standing custom in the marine repair industry.

THE FACTS
On or about May 31, 1974, plaintiff contracted with defendant (Devall Diesel, Inc.) for the major overhaul of the starboard engine of the former's vessel, the M/V Wilda. The repairs were completed on June 5, 1974, at a cost of $7,031.78, and the vessel was returned to active service. Shortly thereafter, several minor problems developed concerning the Wilda's starboard engine. These difficulties were remedied by an employee of the defendant, and the vessel continued to operate. However, in October of 1974, the engine in question began to lose power and emit a considerable amount of smoke. The vessel's captain shut the engine down and operated solely on its port engine for a short period of time. On October 14, 1974, the vessel was docked near Bolivar, Texas, where mechanics from the nearby area attempted to repair the engine. The record indicates that the consensus of opinion at that time was that the vessel's starboard engine was suffering from only a minor difficulty and that no serious repair work was required, nor was any performed.
Plaintiff contacted Anchor Engine Service of Houston, Texas, who sent two mechanics, Grady Sunday and Beato Thomas, to Bolivar, Texas, to examine the engine. Sunday and Thomas were unable to ascertain the cause of the engine's malfunction, and a third mechanic, Eric Rabalais, was dispatched by Anchor Engine Service. After attempting minor repairs, these mechanics opined that the engine would have to be removed from the vessel and transported to their shop at Houston. On October 21, 1974, Sunday, Rabalais, and their supervisor at Anchor Engine Service, Charles Harbison, proceeded to dismantle the malfunctioning engine at their shop. Also present was Donald Hale, a marine surveyor from Groves, Texas. In the course of their work the Anchor Engine Service personnel as well as the marine surveyor discovered and noted numerous defects and discrepancies in the manner in which the engine had been overhauled shortly prior thereto (by the defendant).

CAUSATION
Charles Harbison testified that the bolt securing the camshaft idler gear contained three or more lock washers and that, in his opinion, this condition precipitated the breakdown of the engine. Eric Rabalais, who also worked on the engine, remembered seeing at least two lock washers on the idler gear bearing bolt and concurred in the opinion of his supervisor relative to causation. Donald Hale, the marine surveyor, stated that he observed three lock washers on the camshaft idler gear. The testimony indicated that the idler gear bearing bolt should have contained one flat washer and not two or three lock washers. Apparently, this improper installation of the camshaft idler gear bearing bolt set into motion a chain of events which eventually caused a total breakdown of the vessel's starboard engine.
Voluminous testimony was adduced concerning numerous technical aspects of the engine's assembly, repair and function. There was conflicting testimony concerning the effect and condition of the idler gear bearing assembly in the engine in question. However, the trial judge found the improper installed idler gear assembly to be the culprit and stated:
"The court concludes the plaintiff has established by a preponderance of the evidence that the subject engine failed in October, 1974, because of the faulty installation by the defendant's mechanic of the idler gear assembly. . . ."
After a careful review of the evidence we are of the opinion that a sufficient basis exists therein to sustain this finding of fact *757 on behalf of the district judge.[2] See Canter v. Koehring Company, 283 So.2d 716 (La. 1973).

FAILURE TO CALL CERTAIN WITNESSES
Defendant complains that the two mechanics from Anchor Engine Service, Beato Thomas and Grady Sunday, who originally inspected the engine at Bolivar, Texas, were not called to testify. Defendant contends that the plaintiff's failure to call these witnesses should raise a presumption that their testimony would have been adverse to the latter's cause. We disagree.
The record clearly indicates that neither Sunday nor Thomas performed any major or substantial work on the engine until it was removed to the Anchor Engine Service shop in Houston. Thereafter, Harbison, Rabalais and Sunday dismantled and properly reconstructed the engine.[3] The supervisor on the job, Harbison, testified, as well as did Rabalais, one of the mechanics. We are of the opinion that the testimony of Beato Thomas was not necessary and crucial to plaintiff's case and that Sunday's testimony would have been merely cumulative and repetitious of the evidence adduced from Harbison and Rabalais. A party is not required to produce each and every witness with knowledge of an occurrence in order to be successful in bearing his burden of proof. See Williams v. MacRobert, 308 So.2d 532 (La.App. 4th Cir. 1975); Motors Insurance Corporation v. Boling, 262 So.2d 156 (La.App. 3rd Cir. 1972).

PLAINTIFF'S "WAIVER" OF HIS RIGHT TO CLAIM COMPENSATION FOR DOWN TIME
The District Judge awarded plaintiff the sum of $8,200.40 representing lost income for the period during which Anchor Engine Service repaired the damaged engine. At the very bottom of the invoice for the original overhaul work performed by defendant on plaintiff's vessel, the following statement is found:
"We fulfill our warranty but are not responsible for down time due to failures."
We are of the opinion that to be effective, a waiver of this type must be express, explicit, and strictly construed. See LSA-C.C. Article 1764(A)(2). Guillory v. Morein Motor Company, Inc., 322 So.2d 375 (La.App. 3rd Cir. 1975) and numerous cases cited therein. We find that defendant's attempted disclaimer fails to meet the necessary standards for validity and that same is ineffective. Furthermore, the record contains no evidence that anyone on behalf of plaintiff corporation ever signed the invoice in question, although there is a signature space for that purpose.

PLAINTIFF'S ALLEGED VIOLATION OF CUSTOM
Defendant contends that plaintiff failed to adhere to a well established custom in the marine repair industry that the original repairer be notified of any defect in his work so that he may remedy same. The existence and validity of this custom was sufficiently established by the evidence. The issue rests on a simple matter of credibility. The president of plaintiff's corporation testified that he called the owner of the defendant corporation on October 21, 1974, notifying him of the breakdown of the engine and of its location at the Anchor Engine Service. On the other hand, the president of defendant corporation testified that he was not notified until October 24, 1974, after the engine had already been repaired. While the trial judge did not specifically rule on the issue, we find a sufficient basis in the record to sustain a *758 finding that plaintiff was not in violation of the aforementioned custom.
For the above and foregoing reasons the judgment of the district court is affirmed. Costs of this appeal are assessed against defendant-appellant.
AFFIRMED.
NOTES
[1] The suits against Devall Towing and Boat Service and Fidelity and Casualty Company of New York were dismissed, and those defendants are not parties to this appeal.
[2] As aforementioned, several additional deficiencies existed in the engine, apparently all being the result of faulty workmanship on behalf of defendant. However, the evidence indicates that the improper installation of the idler gear bearing assembly was the precipitating cause of the engine's demise.
[3] Apparently Thomas did not participate on the teardown and reassembly job which is actually at issue here.